Per 'Curiam
: The plaintiff brought this suit for recovery of $3,384.00 claiming it due under the Variable Reenlistment Bonus program. The case comes before the court without oral argument on defendant’s motion to dismiss and plaintiff’s motion for summary judgment. For reasons hereinafter stated, we hold for the Government and, therefore, allow its motion to dismiss.
The facts of the case may be summarized as follows. Plaintiff enlisted in the United States Air Force on October 13,1964, for a term of four years. After he completed liis basic airman training, he was assigned to Indiana University on February 4, 1965, as a Russian Language student. He remained there for two semesters, earning 24 semester hours credit. He was then transferred to Goodfellow Air Force Base, Texas, where he attended an Air Force school for further training until May 11, 1966. He was then assigned to duty as an Apprentice Voice Intercept Processing Specialist. After remaining at that duty assignment for not quite eleven months, plaintiff submitted an application to participate in the Airman Education Commissioning Program (hereinafter “AECP”) in which qualified airmen with at least 30 semester hours of college credit may be assigned to certain colleges to complete their college training and receive a bachelor’s degree, with the aim of providing qualified personnel to be trained as career commissioned officers.
To be eligible for AECP, an airman is required to have six years of obligated service. Plaintiff had only one year, six months, and twelve days remaining on his original four-year enlistment on May 30,1967. In order to be eligible for the program, plaintiff was discharged on that date and immediately reenlisted for a term of six years.
*480 'Under 87 U.>S:C. § 308(a),[1] a member of the uniformed services who reenlists in a regular component of a service within three months after the date of his discharge is entitled to a bonus. 'Plaintiff received a bonus of $1,269.00 under this provision.
Under 37 U.S.C. § 308 (g) ,[2] the source of the dispute in the instant case, provision is made for an additional bonus known as the Variable Reenlistment Bonus (hereinafter “VRB”). This bonus is intended to provide an incentive in addition to that contained in 37 U.S.C. § 308 (a) to encourage personnel in critical skills to remain in the Armed Services. Plaintiff was to have received a VRB of $5,076.00. Of this amount, he was paid $846.00 at the time of his reenlistment, which was the first of six installments to be paid under the VRB program.
Plaintiff was assigned to Oklahoma State University, with the Air Force paying all tuition and fees in addition to full military pay and allowances, under AECP. While attending school, plaintiff received his second VRB of $846.00.
On February 8, 1968, the Comptroller General of the United States rendered Opinion B-160096, 47 Comp. Gen. 414 (1968), holding that enlisted members of the Navy who are discharged and reenlisted in order to acquire the necessary six years of obligated service prerequisite to inclusion *481 in the Navy Enlisted Scientific Education Program (a program almost identical to AECP) are not entitled to a VRB.
Thereafter, William Deschler was given three options by the Air Force:
1. Option Number 1 is continuation in AECP with no change in status except acknowledgment of the impact the Comptroller General decision B-160096 has on the airmen, i.e., no further installment payments of the VBB will be forthcoming, nor will recoupment action be taken.
2. Option Number 2 offers the airmen a chance to withdraw from the AECP, without prejudice, continuation of their current six-year term of enlistment, return to duty in the AFSC and grade in which serving prior to entry into AECP, and full understanding that no further installment payments of the VRB would be forthcoming and that no recoupment action would be taken on payments already made, in compliance with the Comptroller General decision B-160096.
3. Option Number 3 provides for an airman to elect release from any active service obligation established for the express purpose of meeting the requirements of AECP. Election of this option will result in the airman being required to repay any and all unearned portions of both the reenlistment and variable reenlistment bonus previously paid to him. * * * Election of this option will cause them to be ineligible for reenlistment.
Basically, the plaintiff argues that § 308(g) is clear on its face and provides for only two prerequisites for entitlement to the VRB: (1) eligibility for the regular (§ 308(a)) reenlistment bonus and (2) designation as having a critical military skill. The plaintiff maintains that there is no further requirement, either in the statute or its legislative history, that reenlistment be for the purpose of continuing in the •critical skill position.
The Government argues that Congressional intent would be frustrated under the plaintiff’s view; and that a fair reading of the statute makes it clear that the provision only authorizes VRB payments in order to retain personnel in critical skill positions. In the instant case, plaintiff’s reenlistment was for the sole purpose of receiving the education necessary to become an officer, which purpose was eventually fulfilled, and not to fill a critical skill position.
*482 This court had reason to consider § 808 (g) in Parker v. United States, 198 Ct. Cl. 661, 461 F. 2d 806 (1972). While that case actually dealt with the problem of “first” reenlistment, the statement was made that
The legislative history of section 308 reveals that the purpose and intent of the statute was not merely to induce persons with critical military skills to reenlist, but also to induce such persons to make the military their career. * * * [198 Ct. Cl. at 666, 461 F. 2d at 809.]
With respect to our problem, the Parker opinion is not dis-positive and probably could be read to support either side. The legislative history of § 308 (g), however, from which the court in Parker sought direction,[3] clearly supports the Government’s view.
During the House debates, the bill’s sponsor stated:
In addition to the change in basic pay for Uniformed Services personnel, this bill would also provide authority ■to the Secretary of Defense to pay a so-called variable reenlistment bonus. This variable reenlistment bonus would be paid at the time of the first [re] enlistment only and is designed, as explained by the Secretary of Defense, to provide a critically needed monetary incentive so as to permit the military departments to retain experienced rmlitary persormet in critical skills. * * * [Emphasis supplied.] [Ill CONG. EEC. 17184 (1965), remarks of Eepresentative Eivers.]
The motivating force behind the legislation was to retain certain personnel in critical skill areas, not to have these men enroll in college programs for the purpose of becoming officers. This fact is reinforced by legislative history discussing the costs incurred by men leaving critical skill areas after their initial tour of duty:
The bill in section 3 contains language providing that under regulations prescribed by the Secretary of Defense enlisted members designated as having a critical military skill may be paid upon their first reenlistment an additional bonus which may be a maximum of four times the amount which can be paid under present law *483 as a reenlistment bonus. This authority has been recommended as a flexible bonus in order to enable the departments to provide a strong reenlistment incentive to first-term enlisted personnel whose shills are critically required by the military department. * * *
Additional reenlistments are needed in specialties accounting for about 40 percent of total enlisted force strength in order to 'achieve all of the services’ maiming objectives. The problem is much more serious in a small portion of our force. In a few of the most critically undermanned specialties, comprising about 5 percent of our force strength, losses of $10,000 or more occur whenever a first-termer fails to reenUst and operational capability suffers because of severe shortages of careerists. In these shills, additional reenlistment incentives are clearly needed.
The most attractive way to provide a strong reenlistment incentive to first terms in a small part of the force is through a variable reenlistment bonus. A reenlistment bonus concentrates retention money at the reenlistment decision point, thereby getting the most drawing power per retention dollar. A variable bonus can be tailored to fit particular skill retention requirements and can be changed as those requirements change since there are no express or implied commitments about future payments. The present reenlistment bonus does not discriminate amongst skills and thereby does not help solve the selective retention problem. [Emphasis supplied.] ['Senate Comm, on Armed Services, Increase in Rates of Basic Pay for Members of Uniformed Services, S. REP. NO. 544,89th Cong., 1st Sess. 13-14 (1965).]
Obviously, any VRB payments to personnel in critical skills who reenlist in non-critical areas would defeat the very purpose of the statute. The military would then pay both the initial training costs and the VRB.
The plaintiff counters by basically stating that it is to the military’s benefit to have these skilled persons reenlist whether they reenlist to continue in the skilled area or for the purpose of furthering their college education in order to become officers. It is our view that whether or not the latter situation is to the military’s benefit is entirely beside the point. We are called upon to determine what the Congress, through § 308(g), has determined to be a specific need of the military and how best to satisfy that need. The military’s problem, prompting § 308(g), concerned men in critical skill *484 fields and tbe financial loss incurred by having them leave that skilled field.[4] There is no reason to encourage critical skill reenlistment and at the same time allow the reenlistee to pursue a college career which could virtually preclude the exploitation of the critical skill.
The then Secretary of Defense, Robert McNamara, in his statement to the Committee on Armed Services,' urged passage of the bill
* * * to allow the use of the reenlistment bonus as a flexible device in helping to retain people m skills that are in short supply. [Emphasis supplied.] [House Comm, on Armed Services, Uniformed Services Pay Act of 1905, H.R. REP. NO. 549, 89th Cong., 1st Sess. 3 (1965),]
It seems clear that the VRB provision is one of limited application and certainly was not designed as a means of increasing the supply of officers. The following statement from the House Report on the Uniformed Services Pay Act is firm authority for this view:
* * * It is important to note that the variable reenlistment bonus is designed solely for enlisted personnel and will not assist the military department to retain junior officer personnel beyond their obligated tour of duty. [Emphasis in original.] [H.R. REP. NO. 549, 89th Cong., 1st Sess. 48 (1965).]
We have noted, supra, that the Comptroller General, in 1968, rendered Opinion B-160096 adverse to the petitioner therein, which decision is on all fours with our case:
It is recognized that section 308 (g) of Title 37, U.S. Code, does not specifically provide that entitlement to the variable reenlistment bonus shall exist only if the member is reenlisted for the purpose of utilizing the critically designated military skill which he possesses. And we have recognized that regulations may not curtail the bonus after entitlement has vested by requiring that the member continue to satisfactorily perform his *485 duties in the specialty for which, the bonus was authorized. 45 Comp. Gen. 379. However, the legislative history shows that the only purpose in authorizing the bonus was as an inducement to first-term enlisted members possessing a critically needed military skill so that such skill would not be lost to the service and the training of a replacement required. In effect, the bonus is a form of additional compensation for individuals serving in the critical military skills and, while payment of the bonus is not affected by subsequent duty changes, the enlistment must be for that purpose. Therefore, we are of the opinion that payment of the variable reenlistment bonus is not authorized to enlisted members who have been selected for college training under the Navy Enlisted Scientific Education Program or other similar programs and who are reenlisted for the purpose of meeting the obligated service requirements for such training. [47 Comp. Gen. 414 (February 8, 1968).]
We choose to follow the reasoning of the Comptroller General’s opinion.
The plaintiff makes two other arguments: (1) that he has a contractual right to receive VKB payments and (2) that the Government is estopped from discontinuing VBB payments to him. As to the contract claim, which is not vigorously pursued on brief, there is insurmountable precedent for the proposition that a serviceman’s relationship with the Government is not contractual in the ordinary sense. Abbott v. United States, 200 Ct. Cl. 384, 388-389, cert. denied, 414 U.S. 1024 (1973). There was no contract right, established actually or-implicitly, which can be vindicated under •the facts of this case.
In Parker v. United States, supra, this court was faced with an estoppel issue which was, if anything, stronger than that before us now. We held:
It is also true that this whole controversy is due to the clerical error of the Navy. Plaintiff is in no way at fault. 'Regardless, however, and nothwithstanding the equities which are clearly on the side of the plaintiff, this is not a proper case in which the Doctrine of Estoppel may be invoked against the Government. It matters not that a high official in the Navy may have represented to plaintiff that he was entitled to a variable reenlistment bonus, nor that the reenlistment contract so provided, as no official in the Navy has the authority *486 to nullify or contradict the mandate of a statute. We have already determined that, as a matter of law, plaintiff was not eligible to receive a bonus under § 308 (g). This being so, the 'Doctrine of Estoppel cannot be invoked. See Montilla v. United States, * * *. [198 Ct. Cl. at 667, 461 F. 2d at 809.]
In Judge Davis’ concurring opinion in Parker (198 Ct. Cl. at 667, 461 F. 2d at 810), he noted the doubts expressed in his earlier concurring opinion in Montilla concerning the nonapplicability of estoppel to situations involving misrepresentations of fact. As the instant case clearly involves statutory interpretation, such an issue need not be faced.
For the foregoing reasons, we hold for the defendant and allow its motion to dismiss. Plaintiff’s motion for summary judgment is denied and the petition is hereby dismissed.

 37 u.S.C. § 308 (1970) :
“(a) Subject to subsections (b) and (c) of this section, a member of a uniformed service who reenlists In a regular component of the service concerned within three months after the date of his discharge or release from compulsory or voluntary active duty (other than for training), or who voluntarily extends his enlistment for at least two years, and who is not covered by section 207 of the Career Compensation Act of 1949, as amended (70 Stat. 338), is entitled to a bonus computed as follows: * • *"

 37 U.S.C. § 308 (1970) :
* * * * *
“(g) Under regulations to be prescribed by the Secretary of Defense, or the Secretary of Transportation with respect to the Coast Guard when It Is not operating as a service in the Navy, a member who Is designated as having a critical military skill and who is entitled to a bonus computed under subsection (a) of this section upon his first reenlistment may be paid an additional amount not more than four times the amount of that bonus. The additional amount shall be paid in equal yearly installments in each year of the reenlistment period. However, in meritorious cases the additional amount may be paid in fewer installments if the Secretary concerned determines it to be in the best interest of the members. iAn amount paid under this subsection does not count against the limitation prescribed by subsection (c) of this section on the total amount that may be paid under this section.”

 “» * » The issue before us is one of statutory interpretation and the plain words of the statute offer us little guidance. However, we believe that our interpretation is in consonance with the Intent and purpose of the statute as reflected In the legislative history. * * *” [198 Ct. Cl. at 667, 461 F. 2d at 809.]

 The Government, of course, admits that Congress has not required the Services to freeze VRB reenlistees in the skills which they possess at the time of reenlistment for the remainder of their term, which policy would preclude the Department of Defense from good faith adjustments necessitated by changed needs. The facts of our ease, however, do not even raise this problem. It is clear that this plaintiff was not, even at the time of reenlistment, continuing in his critical skill field.