**David W. AIKEN**

v.

**The UNITED STATES.**

**No. 626–82C.**

United States Claims Court.

March 6, 1984.

A.J. Schmitt, III, New Orleans, La., attorney of record, for plaintiff.

Robert A. Reutershan, Washington, D.C., with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D.C., attorney of record, for defendant; Kathleen A. Flynn, Dept. of Justice and Robin Lee, Dept. of Health and Human Services, Washington, D.C., of counsel.

## OPINION

LYDON, Judge:

This is an action against the United States for damages based on an alleged breach of a scholarship agreement between plaintiff and the Public Health Service, Department Of Health, Education and Welfare (HEW) (now Department of Health And Human Services). Plaintiff seeks to recover $36,042 plus legal interest.[1] Defendant denies that it breached the scholarship agreement, but insists, instead, that plaintiff did, and that as a result thereof defendant is entitled to recover on its counterclaim.[2]

Both plaintiff and defendant have moved for summary judgment based on the following facts which were taken from the pleadings, affidavits and documentation appended to the briefs of the parties. There is no dispute about the material facts. Upon consideration of the submissions of the parties, and after oral argument, it is concluded that plaintiff is not entitled to recover but that defendant is entitled to judgment on its counterclaim.

## I.

On October 27, 1972, the Emergency Health Personnel Act Amendments of 1972 was approved. Pub.L. No. 92–585, 86 Stat. 1290. This Act amended the Public Health Service Act. See 42 U.S.C. § 201, et seq. (1976). Under Pub.L. No. 92–585, the Secretary of HEW was authorized to establish the Public Health and National Health Ser-

---

1. Plaintiff seeks $21,042 as damages for lost tuition, fees and stipend and $15,000 as damages for diminished earning capacity, (denoted "lost wages" by plaintiff).

2. Defendant seeks to recover from plaintiff past tuition and stipend payments of $22,630, plus interest thereon at an 8 percent annual rate, computed daily as of the date of the first scholarship payment (i.e., June 30, 1975). Interest was not compounded. As of May 3, 1980, the computation of interest by defendant on the $22,630 base figure amounted to $7,507.46.

vice Corps Scholarship Training Program.[3] The purpose of this program was to obtain trained physicians, dentists, and other health-related specialists for the National Health Service Corps and other units of the Public Health Service (PHS). The Secretary was, in furtherance of this purpose, authorized to award scholarships to applicants covering basic tuition, books, supplies, equipment, student medical expenses and other necessary educational expenses which were not otherwise paid as a part of the basic tuition payment. Such a scholarship was related to pursuit of an approved course of study in an accredited educational institution leading to a degree in medicine, dentistry, or other health-related speciality. Each scholarship was for approved academic training for a period not to exceed 4 years, and involved amounts prescribed by the Secretary and payable in monthly installments.

Section 225 of Pub.L. No. 92–585 provided in pertinent part as follows:

(e) A person participating in the Program shall be obligated to serve on active duty as a commissioned officer in the Service or as a civilian member of the National Health Service Corps following completion of academic training, for a period of time prescribed by the Secretary which will not be less than one year of service on active duty for each academic year of training received under the Program. At least one-half of the period of service required by the preceding sentence must be spent providing health care and services (1) in an area designated under section 329(b), (2) as a member of the Indian Health Service or the Federal Health Programs Service and in an area

(determined under section 329 or otherwise) to have a health manpower shortage, or (3) in connection with any program, designated by the Secretary, for the provision of health care and services in such an area. For persons receiving a degree from a school of medicine, osteopathy, or dentistry, the commencement of a period of obligated service can be deferred for the period of time required to complete internship and residency training. For persons receiving degrees in other health professions the obligated service period will commence upon completion of their academic training. Periods of internship or residency shall not be creditable in satisfying an active duty service obligation under this subsection unless the internship or residency is served in a facility of the Service or other facility of the National Health Service Corps.[4]

(f)(1) If, for any reason, a person fails to complete an active duty service obligation under this section, he shall be liable for the payment of an amount equal to the cost of tuition and other education expenses, and scholarship payments, paid under this section, plus interest at the maximum legal prevailing rate. Any amount which the United States is entitled to recover under this paragraph shall, within the three-year period beginning on the date the United States becomes entitled to recover such amount, be paid to the United States.

(2) When a person undergoing training in the Program is academically dismissed or voluntarily terminates academic training, he shall be liable for repayment to the Government for an amount equal to

---

3. In establishing this program, Congress proposed to make available to the Secretary of Health, Education and Welfare (HEW) a recruitment tool similar to scholarship programs available to the Secretary of Defense for recruitment of health professionals into the military services. *See* S.Rep. No. 92–1062, 92d Cong., 2d Sess., *reprinted* in [1972] U.S.Code Cong. & Ad.News 4832, 4841.

4. The scholarship program did not guarantee or promise any recipient of a scholarship award an internship or residency in a facility of the

Public Health Service (PHS) or other facility of the National Health Service Corps (NHSC). Scholarship recipients were selected for such internships and residencies on a competitive basis and said recipients who wished to perform their internships or residencies at a PHS or NHSC facility were required to participate in that competitive process. As a result, not every scholarship recipient who applied for such an intern or residency position was selected for such training.

the cost of tuition and other educational expenses paid to or for him from Federal funds plus any scholarship payments which he received under the program.

On September 30, 1974, plaintiff filed an application for enrollment in the PHS's Health Professions Scholarship Program. In his application, in response to a question as to his future plans, plaintiff wrote: "Possibly General Practice, or Family Medicine." At this time, plaintiff was a first year medical student at Tulane University School of Medicine.

On or about May 6, 1975,[5] plaintiff received a Notice of Scholarship Award covering the period July 1, 1974—June 30, 1975, under which plaintiff was to be paid a stipend of $6,700, with monthly payments of $750, and his tuition and fees of $2,616 were to be paid for him. In his Notice Of Scholarship Award, plaintiff was advised: "Total Period of Support Recommended 7/1/74—6/30/78."

The Notice Of Scholarship Award set forth certain "Conditions Of Award." These "Conditions Of Award" provided in pertinent part:

1. This award is made upon the condition that the awardee agrees to fulfill the service obligation as specified by Section 225 of the Public Health Service Act and implemented in the governing regulations (42 CFR, Part 62) as follows:

(a) A scholarship recipient is obligated to serve on active duty for one year as a Commissioned Officer in the Public Health Service or as a civilian member of the National Health Service Corps following completion of academic training for each academic year of support or fraction thereof received under this program:

\*    \*    \*    \*    \*    \*

(c) For recipients receiving a degree from a school of medicine or osteopathy, the commencement of a period of obligated service may be deferred for a period of time not to exceed one year for intern-

ship (or equivalent training) and for good cause shown, at the option of the Secretary for an additional period of time for residency training. Such period of internship and residency shall not be creditable in satisfying an active duty service obligation, unless such internship and residency is served in a facility of the Public Health Service, or other facility of the National Health Service Corps.

2. In accordance with Section 225(f) and the implementing regulations:

(a) If, for any reason a participant fails to complete an active duty service obligation, such participant shall be liable for the payment of an amount equal to the scholarship payments, tuition and other educational fees paid, plus interest at the maximum legal prevailing rate running from the date such payments were made. Any amount which the United States is entitled to recover under this paragraph, shall within the three year period beginning on the date on which it is determined that a breach occurred, be paid to the United States. For the purpose of this paragraph, maximum legal prevailing rate of interest shall mean the maximum permissible rate applicable to this type of debt prescribed by the District of Columbia Code on the day of breach.

(b) When a person undergoing training in the program terminates academic training, he shall be liable for repayment to the United States for an amount equal to the cost of tuition and other educational expenses paid to or for such person from Federal funds plus any scholarship payments received by such person under the program. Repayment of such amount shall be within three years of the date of termination.

Plaintiff thereafter received a scholarship award for his second year in medical school. The second award covered the period July 1, 1975—June 30, 1976 and resulted in payment to him of a stipend of $6,750 and

---

5. Plaintiff indicated his acceptance of the award and his agreement with the conditions attendant thereto by appending his signature to the Notice of Scholarship Award on May 22, 1975. An authorized official of HEW signed the Notice of Scholarship Award on June 2, 1975.

payment, on his behalf, for tuition and fees of $3,516. Plaintiff also received a scholarship award for his third year in medical school. The third year award covered the period July 1, 1976—June 30, 1977 and embraced a stipend of $6,750 and estimated tuition and fees of $3,600.

On October 12, 1976, section 225 of Pub.L. No. 92–585, the pertinent portion of which was set forth, *infra,* was repealed, effective October 1, 1977 by Pub.L. No. 94–484, 90 Stat. § 2285, and was replaced by a new NHSC scholarship program. For purposes of this litigation it is only necessary to focus on one of the changes in the scholarship program engendered by Pub.L. No. 94–484. Under the old law, *i.e.,* Pub.L. No. 92–585, scholarship recipients who performed internships or residencies in PHS or NHSC facilities received credit for such service toward the obligated service they were required to perform under the conditions of their scholarship awards. Under the new law, *i.e.,* Pub.L. No. 94–484, scholarship recipients were denied such credit for any periods of internship or residency service performed at a PHS or NHSC facility after September 30, 1976,

By letter dated December 6, 1976, HEW advised all scholarship recipients of the enactment of Pub.L. No. 94–484 as follows:

Your original PHS Scholarship agreement stated that periods of internship and residency would not be creditable in satisfying your active duty service obligation, 'unless such internship and residency is served in a facility of the Public Health Service, or other facility of the National Health Service Corps.'

However, Public Law 94–484, the Health Professions Educational Assistance Act of 1976, signed by the President on October 12, 1976, states that

Periods of internship or residency served before September 30, 1976, in a facility of the National Health Service Corps or other facility of the Public Health Service in accordance with an agreement entered into under section 225(b) of the Public Health Service Act (as in effect before that date) shall be creditable in satisfying a service obligation incurred under the Public Health and National Health Service Corps Scholarship Program as revised by this subsection.

Section 408(b)(2)(C)

We have been advised by the Office of General Counsel of the Department of Health, Education, and Welfare, that the effect of this new provision is that periods of such training in PHS facilities *after* September 30, 1976, will *not* be creditable toward fulfilling the service obligation incurred through the PHS Scholarship Program.

Since the above quoted statutory provision runs counter to the provisions of your original Scholarship agreement, the Bureau is seeking to obtain relief through amending legislation in the forthcoming 94th Congress. Such action, however, may be unsuccessful or may not be secured in time to aid you if you are already in such training or are currently attempting to secure such an internship or residency.

Accordingly, if you are concerned about this issue and wish further information, you may call me person-to-person collect, Monday through Friday, 8:30 a.m. to 5:00 p.m., EST. If you are unable to reach me, I will try to return your call as soon as possible.

By letter dated December 15, 1976, plaintiff advised HEW as follows:

The contract that I signed with HEW which set forth the terms of my scholarship agreement stipulated that residency or internship served in a PHS hospital would be creditable in satisfying my active service obligation. In your letter of Dec. 6, and again on the phone this afternoon your office informs me that Public Law 94–484 runs counter to the above mentioned provision of my initial agreement. I can assure you that had that provision not been in the contract I would not have signed it.

It is unfortunate that the contract which I signed in good faith has been broken by the government, but I cannot

accept the terms of the ammended [sic] agreement. Due to this obvious breach of contract on your part, from this point in time onward I consider my contract with the Department of Health, Education, and Welfare to be null and void, and I therefore feel that I have no further obligation or commitment to your program.

Following receipt of plaintiff's letter of December 15, *supra,* a staff member of the PHS scholarship program telephoned plaintiff to discuss said letter. The staff member informed plaintiff that HEW had legislative efforts under way to change the creditability provision limitation of Pub.L. No. 94–484. Plaintiff, however, indicated he still wanted to discontinue all future scholarship benefits and that he would not change his mind in this regard unless PHS could guarantee him an internship or residency in a PHS facility following his graduation from medical school in June 1978. The staff member advised plaintiff that no such guarantee was possible because the selection of interns was a competitive selection process.

By letter dated January 4, 1977, plaintiff advised HEW as follows:

I hope our phone conversation this morning clarified my position in regard to my former contract with your office. What follows is I believe an accurate summary.

1) You may at your discretion stop all further monthly stipend checks, as I do not feel you have any obligation to me after Dec. 15, 1976. This is not a request meant to infer at [sic] I am in any way responsible for the demise of our contract, but is made at your request as a clarification of my previous letter.

2) I do not feel that your office has any obligation for my tuition payments for any instruction I receive [sic] from Tulane University after Dec. 15, 1976.

By letter dated March 15, 1977, HEW wrote plaintiff as follows:

This is in response to your letters and telephone conversations with this office

indicating your opinion that the enactment of Public Law 94–484 as it relates to scholarship service obligations constitutes a breach of your PH/NHSC Scholarship Program agreement with the Department, and that you therefore have no further obligations or commitments to fulfill with respect to this agreement. You have also indicated that as of December 15, 1976, you no longer wish to receive tuition payments from the Scholarship Program.

As previously indicated, we are presently seeking a Congressional amendment to the Public Law 94–484 provision prohibiting credit toward service obligations for internships or residencies served in PH or NHSC facilities before September 30, 1976. While we appreciate your concern regarding this creditability problem, we do not concur in your opinion that the enactment of Public Law 94–484 constitutes a breach of your PH/NHSC Scholarship Program agreement and that you no longer have obligations or commitments with respect to this agreement.

According to section 62.7 of the Departmental regulations (42 CFR Part 62) implementing the PH/NHSC Scholarship Program, you must serve one year of active duty *for each academic year or fraction thereof of scholarship support received.* Both the Department regulations and your scholarship agreement provide that if you fail to complete your active duty service obligation you will be 'liable for the payment of an amount equal to the scholarship payments, tuition, and other educational fees paid plus interests at the maximum legal prevailing rate running from the date such payments were made.'

Since it is unclear from your letters and telephone conversations whether you intend to serve your active duty obligation, we would appreciate receiving a clarification from you concerning this matter as soon as possible. In addition, should you decide in light of the above discussion to reconsider your request to stop the payments of your scholarship award and wish

to reinstate the receipt of such payments, please advise us of your decision.

We do hope that you do not take any precipitous action at this time, however, since the Department is actively pursuing a legislative amendment to section 408(b)(2)(C) of Public Law 94–484 to allow a PH/NHSC recipient to receive credit for periods of internship or residency served in a Public Health Service or National Health Service Corps facility.

By letter dated March 29, 1977, plaintiff acknowledged receipt of HEW's March 15 letter and reaffirmed his view that he considered his contract with HEW to be null and void, due to breach thereof by HEW, and that as a result he had no further obligation or commitment to the scholarship program.

On May 4, 1977, HEW demanded from plaintiff repayment of all scholarship funds advanced to plaintiff plus interest, viewing plaintiff's letter of March 29, 1977, as the date plaintiff withdrew from the PHS scholarship program. HEW advised plaintiff that the sum of all payments made to him by HEW as stipend payments and tuition payments made to Tulane University School of Medicine on his behalf was $22,-632. Plaintiff was further advised that interest, which would not be compounded, would be charged on the outstanding balance at an 8 percent annual rate, computed daily as of the date of the first scholarship payment.

By letter dated May 16, 1977, plaintiff refused to repay HEW, maintaining that HEW breached the scholarship agreement and that such action negated any obligations he had under the scholarship agreement and program. Subsequent efforts by HEW to collect the scholarship payments made to plaintiff were likewise unsuccessful.

On August 1, 1977, Pub.L. No. 94–484 was amended by Pub.L. No. 95–83, 91 Stat. 394 to provide:

If an individual received a scholarship under the Public Health and National Health Service Corps Scholarship Program for any school year beginning before the date of the enactment of this Act, periods of internship or residency served by such individual in a facility of the National Health Service Corps or other facility of the Public Health Service shall be creditable in satisfying such individual's service obligation incurred under that Program for such scholarship or for any scholarship received under the National Health Service Corps Scholarship Program for any subsequent school year.

This amendment was retroactively effective as of October 12, 1976. It is not unreasonable to attribute this amendment to the efforts of HEW to have Congress repeal the law denying credit for internships and residencies at PHS and NHSC facilities relative to service obligations of scholarship recipients. As a result of this amendment, scholarship participants such as plaintiff were able to receive credit for any periods of internship or residency served in a PHS or NHSC facility after September 30, 1976, toward their service obligations.

In the fall of 1977, plaintiff would have been eligible to apply to the HEW Bureau of Medical Service for consideration for an internship in a PHS or NHSC facility because he was in his fourth year of medical school. Any fourth year medical student, whether or not a participant in the PHS scholarship program, could apply and compete for the available internship or residency positions at PHS facilities or hospitals. There is no evidence plaintiff made such an application. In early 1978, internship and residency selections for PHS and NHSC facilities were made on a competitive basis.

On December 6, 1982, plaintiff filed his "Claim For Relief" (complaint) in this court seeking recovery of $36,042, plus legal interest and costs of legal proceedings. Defendant's Answer and Counterclaim, filed March 7, 1983, disputed plaintiff's right to recover any amount and counterclaimed for the recovery from plaintiff of $22,632 plus interest. Plaintiff's "Answer" to defendant's counterclaim was filed on March 21, 1983.

## II.

### A

■ The parties present their arguments and contentions in terms of contract rights and violations thereof. Both view the application for a scholarship and the notice of scholarship award as establishing contractual rights and obligations. In truth, however, the application for and the award of a scholarship are merely implementation tools of Pub.L. No. 92–585. Pub.L. No. 92–585 authorized the PHS scholarship program and imposed conditions on the award of any program scholarship. It is not without significance that in the Notice Of Scholarship Award, signed by the parties, these statutory conditions were specifically set forth therein. Accordingly, it is the court's view that the rights and obligations of the parties in this case have a statutory and not a contractual foundation.

Under Pub.L. No. 92–585, it was provided that a scholarship recipient such as plaintiff had to perform obligated service on active duty as a Commissioned Officer in the PHS or as a civilian member of the NHSC following completion of academic training. A recipient was obligated to serve on active duty for one year for each academic year he received scholarship support. Pub.L. No. 92–585 provided, however, that this active duty service obligation could be satisfied if the scholarship recipient served an internship and residency in a facility of the PHS or other facility of the NHSC.

Plaintiff claims that when Congress legislated out the opportunity to fulfill his active duty obligation by performing internship or residency in a PHS or NHSC facility by means of Pub.L. No. 94–484, the contract he had with HEW was breached and thus he was relieved of any obligation to perform active duty service for past scholarship payments and, indeed, was entitled to damages for scholarship payments not made and for wages lost.

Plaintiff, however, ignores the critical fact that Congress created the law, *i.e.,* Pub.L. No. 92–585, that permitted internship and residency to be served in a PHS and NHSC facility to satisfy the active duty service requirements imposed on scholarship recipients. The presumption is that Pub.L. No. 92–585 was not intended to create private contractual or vested rights, but merely declared a policy to be pursued until Congress ordained otherwise. *See Dodge v. Board of Education,* 302 U.S. 74, 78–79, 58 S.Ct. 98, 100, 82 L.Ed. 57 (1937); *Rafferty v. United States,* 210 F.2d 934, 936–937 (3d Cir.1954).

Congress did ordain otherwise on October 12, 1976, when Pub.L. No. 94–484 was enacted, with an effective date of October 1, 1977. Since Pub.L. No. 92–585 did not create any contract or vested right in plaintiff, Congress was legally free to alter, amend and repeal said law even if plaintiff would be deprived of some future benefit as a result of said repeal, and even if plaintiff had taken action he would not have taken had he been able to foresee that a repeal would be forthcoming.

As of October 12, 1976, plaintiff had no contractual or other right to serve an internship or residency in a PHS or NHSC facility since he had not completed his academic training. It was not until June 1978 that plaintiff completed his academic training. Accordingly, assuming that plaintiff had a right to an internship or residency position in a PHS or NHSC facility that right would not vest until he completed his academic training. Until his right in this regard vested, that right could lawfully be revoked by Congress. The most that can be said for plaintiff's position is that he had a contingent expectancy which was temporarily voided by an Act of Congress. There was no contract between plaintiff and HEW. *See Rafferty v. United States, supra,* 210 F.2d at 936–937; *Lawrenson v. United States,* 153 F.Supp. 790, 139 Ct.Cl. 370, 372–374 (1957). *See also Bickford v. United States,* 228 Ct.Cl. 321, 329, 656 F.2d 636, 642 (1981); *Deschler v. United States,* 203 Ct.Cl. 477, 484–485 (1974).

### B

■ Even assuming, *arguendo,* that the rights and obligations of the parties were

strictly contractual, it must be concluded that there was no breach of said contract by defendant.[6]

Plaintiff's position, simply stated, is that the completed application he submitted to HEW for enrollment in the PHS's Health Professions Scholarship Program, and the Notice Of Scholarship Award, which set forth conditions, etc., relative thereto, executed and agreed to by plaintiff and HEW, constituted the contract which is the subject of discussion herein. Plaintiff's claim is that HEW breached this contract when it advised plaintiff, and all other scholarship recipients, on December 6, 1976, that enactment of Pub.L. No. 94–484, *supra*, precluded crediting service of internship or residency in a PHS or NHSC facility toward fulfilling the service obligation of a scholarship recipient under the PHS's scholarship program.

In addressing plaintiff's contention, one must first look to the contract documents to see what the agreement of the parties was. Plaintiff claims that the contract documents provided him with an opportunity to serve an internship and residency in a PHS or NHSC facility, upon completion of his medical studies at Tulane Medical School in June 1978, and to receive credit for such service in meeting the service obligation requirement of his scholarship award. With the passage of Pub.L. No. 94–484, *supra,* plaintiff alleges, this contract opportunity was breached "for it removed any possibility of [plaintiff] working in a Public Health Service facility. The opportunity to work in a Public Health Service facility, preferably in New Orleans, was the point which induced [plaintiff] to sign the con-

tract * * *. At the time the contract was signed, [plaintiff] believed that the chances were very good that he also would be assigned to work in the Public Health facility in New Orleans, and had the possibility of working in New Orleans not existed, he would have never agreed to enter the program * * *." (Plaintiff's main brief p. 2.)[7]

There is no clear and explicit language in the contract documents which confers on plaintiff the right he claims was breached. There was no express promise by the government that by participating in the scholarship program, plaintiff was assured of the opportunity to serve an internship or residency in a PHS or NHSC facility. A contract is the expression of mutual intent and agreement, and, in the absence of any express provision in the contract that participation in the scholarship program carried with it an obligation to make available to the participant an internship or residency opportunity in a New Orleans PHS or NHSC facility, there is no basis for imputing to defendant the assumption of such an obligation. *See H.F. Orchards v. United States,* 4 Cl.Ct. 601 at 605–607 (1984) (Miller, J).

The Notice Of Scholarship award merely parrots the pertinent language of section 225 of Pub.L. No. 92–585, *supra,* to the effect that internship or residency service shall not be creditable in satisfying an active duty service obligation unless the internship or residency is served in a PHS or NHSC facility. There is no language in this Notice which conferred on plaintiff any right or opportunity relative to a subsequent internship or residency. This Notice

---

6. As indicated earlier, Congress on August 1, 1977, reversed itself in Pub.L. No. 94–484, effective October 12, 1976, and again allowed service as an intern or resident in a PHS and NHSC facility to be creditable toward the scholarship active duty service obligation. As a result, when plaintiff's contingency right vested, *i.e.,* in June 1978 when he completed his academic training, the opportunity to serve, all other conditions being met, an internship or a residency at a PHS or NHSC facility was available to him. Viewed in this light and assuming a contract, there could be no breach of any such contract.

7. The fact of the matter is that plaintiff could apply for an internship or residency at a PHS facility in New Orleans whether he was a scholarship recipient or not. Passage of Pub.L. No. 94–484 had no effect whatsoever on this "possibility" or "opportunity." Accordingly, there was no breach of the contract as framed by plaintiff in its moving brief. The fact that plaintiff was a scholarship recipient neither added to nor detracted from his "chances" of serving an internship or residence in a PHS facility in New Orleans.

and the like statutory language in section 225 of Pub.L. No. 92–585 merely provided that if a scholarship recipient, after completing medical studies, served an internship or residency in a PHS or NHSC facility, he would receive credit for such service toward his scholarship service obligation. The language of the Notice created no rights in plaintiff relative to internship or residency service and credits therefor. At best, the language merely provided for a "contingent expectancy," not a contractually enforceable obligation.

This interpretation of the contract documents is confirmed by two facts. First, the internship and residency service program of PHS was a competitive process. Plaintiff recognizes this fact for he speaks of the "opportunity" he was deprived of and the "possibility" of working in a PHS facility and the "chances" of working in a PHS facility in New Orleans. Since selection for PHS or NHSC internship or residency was a competitive process, it would be unreasonable to interpret the contract documents as conferring an enforceable right on plaintiff relative to such service. Second, service as an intern or resident in a PHS or NHSC facility was open to all who were or had completed their medical studies. It was not confined only to those who participated in the PHS scholarship program. It would be unreasonable to interpret the language of the Scholarship Notice as conferring preferred status on scholarship recipients who have their way paid through medical school over those medical students who paid their own way through medical school. Such a conclusion would not further the purpose of Pub.L. No. 92–585, as amended, *supra,* which was to obtain trained physicians and other medical personnel for the NHSC and other units of the PHS.

■ Plaintiff argues that the December 6, 1976, letter from HEW to plaintiff and other scholarship recipients concedes that defendant breached its agreement with plaintiff. This is not so. Fairly read, this letter does no more than advise plaintiff that Pub.L. No. 94–484 precluded scholarship recipients from satisfying their service

obligations by a PHS or NHSC internship or residency. While HEW in this letter states that the statutory provision in question "runs counter to the provisions of your original Scholarship Agreement," plaintiff reads too much into this notification of statutory change. In its letter to plaintiff of March 15, 1977, HEW specifically denied that enactment of Pub.L. No. 94–484 constituted a breach of the scholarship agreement. In any event, party characterizations or mere contract formalisms cannot alter the substance of a transaction. *Xerox Corp. v. United States,* 228 Ct.Cl. 406, 411 n. 2, 656 F.2d 659, 662 n. 2 (1981). It is the court's function, not the parties', to interpret, construe and determine: first, if the parties entered into an enforceable contract, and second, whether any such contract was breached.

C

■ Plaintiff maintains that defendant's breach of the executory contract in question was an anticipatory breach. It is well settled contract law that there may be an anticipatory breach of an executory contract by an absolute refusal to perform it. *Roehm v. Horst,* 178 U.S. 1, 8, 19, 20 S.Ct. 780, 783, 787, 44 L.Ed. 953 (1899). It must be stressed that an anticipatory breach must be preceded by "an absolute and unqualified refusal to perform," *City of Fairfax, Va. v. Washington Metropolitan Area Transit Authority,* 582 F.2d 1321, 1326 (4th Cir.1978), or by an "absolute renunciation" of the contract in question. *Kennedy v. United States,* 164 Ct.Cl. 507, 514 (1964).

■ In the case at bar there was no such absolute renunciation or absolute and unqualified refusal to perform. Instead, when HEW informed plaintiff of Pub.L. No. 94–484 and its effect on creditable service in satisfaction of the service obligation of scholarship recipients it also informed plaintiff that it was seeking to obtain relief through amending legislation in the forthcoming Congress. HEW continued to inform plaintiff of these efforts and pleaded with plaintiff not to take any precipitous

action at that time.[8] These efforts by HEW do not reflect an absolute renunciation or an absolute and unqualified refusal to perform the agreement in question. Instead, they reveal an concerted and determined effort to restore the *status quo ante* Pub.L. No. 94–484. On August 1, 1977, these efforts by HEW were successful. These circumstances militate against any holding that HEW committed an anticipatory breach of its scholarship agreement with plaintiff.

Plaintiff ignored the pleas of HEW not to act hastily or rashly. In the court's view, plaintiff acted with undue haste in terminating the scholarship agreement. During the period December 1976—March 1977, the situation was unclear, unsettled and in flux relative to the availability of service credit for a PHS or NHSC internship or residency. It was clear, however, the HEW was working to clarify and remedy the matter. More importantly, there was no immediate pressure on plaintiff relative to the service credit matter. Plaintiff was not eligible to begin an internship or residency service until his graduation from medical school in June 1978. He was, however, eligible to apply for a residency or internship position in the fall of 1977, the beginning of his fourth and final year of medical school. Accordingly, the service credit situation became clear and settled on August 1, 1977, with the passage of Pub.L. No. 95–83, *supra,* prior to the time plaintiff would be required to submit his application for intern or residency service consideration. Plaintiff should not have acted in the hasty manner he did. He acted unreasonably when he failed to give HEW a reasonable period of time to resolve the credit service matter.

Under these circumstances, it is concluded that plaintiff cannot correctly claim an anticipatory breach of contract while the status of the service credit matter was legally so unsettled, unclear and in a state of flux. The period plaintiff would have had to wait for a final determination of the matter was not unreasonable under the circumstances existing at that time. *See Pauley Petroleum, Inc. v. United States,* 219 Ct.Cl. 24, 45–46, 591 F.2d 1308, 1320 (1979). Plaintiff's contention that defendant's conduct amounted to an anticipatory breach of the scholarship agreement is found to be without merit.

Even if the defendant is held to have breached the agreement, it is difficult to appreciate how plaintiff has been damaged. Plaintiff's claim is that he planned on serving an internship or residency in a New Orleans PHS or NHSC facility after completing medical school. Plaintiff's briefs and oral argument are based on the proposition that only scholarship recipients could apply for such positions. However, uncontradicted affidavits submitted by defendant in support of its motion for summary judgment establish that any graduate of a medical school was eligible to apply for such positions. Accordingly, plaintiff was free to apply for an internship or residency in a PHS or NHSC facility in New Orleans in late 1978 or thereafter whether he was a participant in the PHS scholarship program or not. The fact that he withdrew from the scholarship program had no effect whatsoever on his opportunity to apply for a residency or internship in a PHS or NHSC facility in New Orleans or elsewhere. Plaintiff never submitted any such application. Thus, his failure to secure an internship or residency in a New Orleans PHS or NHSC facility was due not to any breach by the government, but to plaintiff's own failure to apply for such a position. Had plaintiff applied for and received an internship or residency at a PHS or NHSC facility following graduation from medical school in June 1978, plaintiff would have received credit for such service toward his service obligations for the scholarship payments he

---

8. Pub.L. No. 94–484 was enacted on October 12, 1976. From December 6, 1976, until March 15, 1977, plaintiff was advised of HEW's efforts to obtain remedial legislation. On March 29, 1977, plaintiff made clear to HEW he had no further obligation or commitment to the scholarship program. On August 1, 1977, HEW's efforts were successful. Given the deliberate and slow progress of many legislative endeavors, it is not unreasonable to view HEW's efforts in this regard as commendably speedy.

received and the tuition payments made on his behalf during the period July 1974— March 1977. It is to be remembered that participation in the PHS scholarship program was not a *sine qua non* to participation in the PHS intern or residency program following graduation from medical school.

## III.

■ Section 225(f) of Pub.L. No. 92–585, *supra,* provided that any scholarship recipient who failed to complete "for any reason" an active duty service obligation shall be liable for the scholarship payments made to him, as well as tuition and other educational expenses paid on his behalf by HEW, plus interest at the maximum legal prevailing rate. Regulations implementing this statutory command were also promulgated. 42 C.F.R. § 62.8 (1977). The Notice Of Scholarship Award executed by plaintiff also contained the language of section 225(f) under "Conditions Of Award." Accordingly, the repayment obligations of a scholarship recipient such as plaintiff who failed to complete his active duty service obligation had a statutory, regulatory and contractual foundation.

There is no dispute about the fact that plaintiff failed to complete his active duty service obligation. There is no dispute about the fact that plaintiff received scholarship payments from HEW and that tuition and other educational expenses were paid to Tulane University Medical School on his behalf during the period July 1974— March 1977. The controlling statute, implementing regulations, and, indeed, the scholarship agreement between plaintiff and HEW provided that plaintiff would have to repay all scholarship payments to him as well as the tuition and fee payments made on his behalf if he failed *"for any reason"* to complete his active duty service obligations vis-a-vis those payments. It is therefore clear that defendant is entitled to recover on its counterclaim.

Defendant paid a total of $22,630 for plaintiff's medical school expenses. This is the amount defendant seeks to recover on its counterclaim. This amount includes both payment of tuition and fees to Tulane University Medical School on plaintiff's behalf and payments to plaintiff himself of monthly cash stipends. Both plaintiff and defendant agree that the applicable interest rate is 8 percent per annum, simple interest. The regulations provided that said interest was to run from the date such payments were made by HEW to plaintiff or to the medical school or otherwise on plaintiff's behalf. *See* 42 C.F.R. § 62.8(a).

Plaintiff does not dispute that $22,630 represents the total amount of scholarship funds expended relative to his participation in the PHS scholarship program. Plaintiff does, however, claim that he should not have to reimburse tuition and other educational fee payments because these amounts were not paid directly to him but were paid directly to the medical school. Such a position is totally without merit. Such payments were made on his behalf and had they not been made on his behalf he would have had to make payment thereof himself. Further, Pub.L. No. 92–585, the governing regulations, 42 C.F.R. § 62.8, and the scholarship agreement clearly provide that plaintiff was liable for the repayment of tuition and other educational fees paid by HEW on plaintiff's behalf.

Finally, plaintiff contends that he should not be made to repay any amount whatsoever under the circumstances of this case. However, as indicated previously, the circumstances of this case do not favor plaintiff's contention.

## IV.

It is concluded that plaintiff is not entitled to recover on its claim. It is further concluded that defendant is entitled to recover from plaintiff on its counterclaim $22,630, plus simple interest at the rate of 8 percent per annum. Since the $22,630 sum was paid in a series of installments, the interest due shall be calculated from the date of each payment made to or on behalf of plaintiff. This interest shall continue to be calculated until the anticipated date of judgment herein. The anticipated date of

judgment is hopefully thirty (30) days from the date of this opinion.

The parties are directed to file with the court within thirty (30) days of the date of this opinion a stipulation of the amount of defendant's counterclaim, setting forth the total amount thereof, with interest computed up to the anticipated date of judgment. It is the opinion of the court that the calculation of the interest due on the $22,630 figure should not present any problems and should be an arithmetical matter on which the parties can reach agreement by way of stipulation. If the parties cannot reach agreement on the amount of defendant's counterclaim, then further proceedings will be necessary.