KNAPP, Respondent, vs. DAVIDSON, Appellant.

*January 9—February 6, 1923.*

*Vendor and purchaser: Rescission of contract before time of performance: Want of title in vendor as ground of rescission: Remedies of vendee.*

1. A vendee may rescind a land contract, if procured by fraud, before the time of performance, and recover the purchase money paid thereon.
2. After the expiration of such a contract the vendor must be able to furnish the title agreed upon, and if he fails to do so the vendee may rescind and recover the price paid.
3. The vendee in such contract is entitled to rescind and recover the price paid if the vendor cannot convey title to substantially all the land agreed to be sold.
4. Executory contracts for the sale of land cannot be rescinded and payments of purchase money recovered by the vendee before the time for performance merely because the vendor has not perfect title at the date of the contract; and this is especially true where the party applying for equitable relief is himself in default.
5. A valid contract for the sale of land may be made by one who has only the equitable title, or partial title, or a title subject to incumbrances, and if the vendor fails to convey as stipulated in the agreement he may be compelled to respond in full damages, but he is entitled to the time agreed on for performance in which to remove incumbrances or perfect his title.
6. Undoubtedly there are exceptional circumstances—as where fraud has induced the contract, or where it is clear that performance on the part of the vendor will be impossible—under which, in executory contracts of sale, the purchaser may rescind the contract and recover payments made.

APPEAL from a judgment of the circuit court for Vernon county: E. C. HIGBEE, Circuit Judge. *Reversed.*

This is an action brought by the vendee to cancel a land contract and recover from the vendor $1,280, the amount paid by the vendee when the contract was made.

The contract was made on November 3, 1920, and was in the usual form. According to its terms *Davidson* agreed

to sell to *William Knapp* and Sarah Knapp a certain farm for the sum of $11,600, of which $1,280 was to be paid at the time of making the contract, $1,500 on January 10, 1921, and $2,000 a year thereafter until one half the purchase price was paid, at which time *Davidson* was to give a deed with "good and sufficient abstract for said land" and to take a mortgage with interest at seven per cent. for the balance. Taxes assessed after January 1, 1920, were to be paid by the vendee.

At the same time *Davidson* gave a bill of sale of the personal property on the farm and received back a chattel mortgage covering such property. The bill of sale conveyed the entire interest in certain items of property and a half interest in other specified items.

The land in question was owned by one Clark. It appears that on January 14, 1919, Clark had contracted to sell the land to Daniel Walling, and that by an indorsement dated November 15, 1919, Walling had assigned the contract to *A. L. Davidson* and Tessie Davidson. The contract provided for a down payment of $1,000 and the further sum of $6,500, as follows: $500 in two years from date (January 14, 1921), $1,000 three years from date (January 14, 1922), and it was further provided that when these payments had been made the vendee should take a deed and give back a mortgage for $5,000 at six per cent. This contract was recorded on December 3, 1919.

In the contract between *Davidson* and *Knapp* no time was set for the taking of possession by *Knapp*. The farm was then occupied by one Stout, a renter. Defendant testified that he expected *Knapp* to take possession about January 1, 1921, and that he so arranged with the tenant that this could be done; that after the payment of January 10th was due he arranged a meeting with *Knapp* and tried to induce him to make the payment; that *Knapp* refused, but demanded possession of the farm; and that he told *Knapp* that

he could not have possession until he made "some kind of a payment on that $1,500." In December, 1920, the tenant, Stout, sold part of the personal property on the farm, and plaintiff received half the proceeds.

On behalf of the plaintiff it was shown that defendant, *Davidson,* had no real property in his own name; that he and his wife jointly had an interest in the farm in question; that they owned another farm of the value of $5,000, subject to a $1,000 mortgage; that they owned a home; and that defendant held certain personal property in his own name. It was shown that the land contract from Clark to Walling contained the following clause: "Said grantors reserve the right to remove the growing trees on about three acres on the northwest part of said farm within two years."

Trial was had before the court without a jury. The trial court found as facts, in addition to those stated, that plaintiff made no attempt to take possession of the farm until after the 10th of January, when the payment of $1,500 became due; that defendant paid taxes amounting to $188.90 which plaintiff had agreed to pay; that at the time of making the contract defendant paid $348 to his brokers for services; that on January 5, 1921, plaintiff listed the farm for sale with certain real-estate agents; that after the payment of January 10th was defaulted defendant refused to allow plaintiff to take possession of the farm until a satisfactory payment was made on the amount due; and that at the time plaintiff entered into the contract he had no knowledge or information that the defendant had no title to the premises in question.

Judgment was ordered in favor of plaintiff for $1,280, less the amount he had received from the sale of personal property.

The cause was submitted for the appellant on the brief of *C. W. Graves* of Viroqua, and for the respondent on that of *Smith & Moen* of Viroqua.

JONES, J.   The facts in the case are almost wholly un-disputed.   The only finding of the court to which appellant excepted was to the effect that when the contract was made and the first payment paid plaintiff had no knowledge or information that defendant had not title to the premises contracted to be sold.

The contract under which defendant claimed title had been duly recorded and showed that it ran to the defendant and his wife as vendees, and it also showed the reservation of the timber on about three acres if removed within two years.   On the subject of notice there was the further testi-mony that the plaintiff had requested Clark, the original owner, to extend the time of payment of $500 for the con-venience of both plaintiff and defendant.

One of the grounds for rescission asserted by counsel for plaintiff is that he had been deprived of possession. Evidently the trial court did not regard this as a reason for rescission, because it was found that plaintiff did not under-take to take possession and made no demand for possession until after the second payment had become due.   It was established by the proof that plaintiff did not desire to take possession when the contract was made nor at any time until he had made default in the second payment.   He was living on another farm, and it was arranged between the parties and the tenant on the land in question that plaintiff might take possession at his convenience.   After he had defaulted in his second payment and told defendant that he could not fulfil the contract he asked for possession.   Obviously the refusal to give possession under such circumstances should not be held a breach of the contract on the part of the de-fendant.

Counsel for the vendee also urge that the defendant was insolvent.   The court did not so find, and such a finding would not have been justified by the evidence.   The proof showed that he had paid a substantial amount on the land

agreed to be sold; that he and his wife owned another farm near La Farge worth $5,000 on which there was a mortgage of $1,000; and that they also owned another house. There was testimony of a banker in the community that his general reputation for honesty in complying with his contracts was good and that he had a line of credit for $2,000 at the bank. He had paid the sums due on the land contract in which he was vendee, and the owner of the contract testified that he intended, when its terms were complied with, to convey the property to him or his assigns.

In arriving at the conclusion made the trial court evidently relied upon the fact that when the vendor executed the agreement to the plaintiff he did not have title to the land. The defendant had taken an assignment of the contract given by the original owner and that assignment ran to the defendant and his wife, while the contract running to the plaintiff was signed by the defendant only.

The contract under which defendant acquired his interest was dated January 14, 1919, and contained a reservation of the right to remove growing trees on about three acres within two years. This action was commenced May 11, 1921, and there was no evidence that the timber had been removed.

About the time that the second payment of $1,500 became due the plaintiff notified defendant that he would not be able to make the payment and could not go through with the deal. He had failed to pay the taxes for the year 1920, as stipulated in the contract, and defendant had paid therefor $188.90, and had also paid as commission $348 to real-estate agents for making the sale to the plaintiff.

When the plaintiff notified the defendant that he would not consummate the contract no objection was urged that the title was defective, and it appears that a short time before giving such notice he had employed agents to sell the land.

The contract was on a printed form commonly used in

this state, which contained no warranty or guaranty that the defendant then owned the land, but bound him, when the conditions were complied with, to deliver a sufficient warranty deed clear of all liens and incumbrances except those created by the act or default of the vendee. It also contained the usual clause that if the vendee failed to comply with the terms of the contract the agreement should, at the option of the vendor, be utterly void and payments therein forfeited.

The question is thus presented whether the plaintiff, being himself in default, could maintain his suit in equity to rescind the contract long before its maturity although defendant had promptly performed all the stipulations on his part. Counsel for plaintiff rely on authorities which hold that a vendee may rescind the contract if procured by fraud before the time of performance has arrived and recover purchase money paid, and on other cases which hold that the vendor, after the expiration of the contract, must be able to furnish the title agreed upon, and that if he fails to do so the vendee may rescind. These propositions are well settled. It is also clear that the vendee is entitled to rescind if the vendor cannot convey title to substantially all the land agreed to be sold. This is because the court cannot make a new or different contract for the parties. It is also well settled that the right to rescind is not the only remedy of the vendee.

The trial court relied upon the case of *Taft v. Kessel,* 16 Wis. 273. That was an action in which the vendor brought suit against a purchaser on a land contract for the balance of the purchase money, and the vendor had not title. The contract stated that the vendor was the owner and had the usual covenants to convey marketable title. In the answer there were allegations of fraud with respect to title and other matters. The trial court excluded all evidence of fraud and entered judgment for the plaintiff, and this judg-

ment was reversed. The facts were so widely different from those in the present case that we cannot regard that decision as at all controlling.

In the case at bar plaintiff's counsel urge that the vendee was induced to enter into the contract by means of fraud, but the court found no fraud and there is no evidence upon which such a claim can be based. It would be a dangerous doctrine that fraud consists merely in making a contract to sell land when at the time the vendor is not invested with complete title. All the evidence convinces us that when the contract was made it was made in good faith by both parties and that they expected to comply with its terms. There is no testimony from which it could be inferred that the vendor believed or knew that he could not comply with the agreement.

In *Diggle v. Boulden,* 48 Wis. 477, 4 N. W. 678, it was held that the mere fact that the vendor of land by executory contract has not acquired the legal title when an intermediate instalment of the purchase money becomes payable by his vendee is no defense to his action for such instalment, where by the contract the deed is not to be made until payment of the last instalment, which will not become due for a considerable length of time. Mr. Justice ORTON used the following language (p. 484):

"In this case, it may be said that, although the respondent has not yet obtained the title, the presumption is that he will either obtain such title, and make the proper conveyance of it to the appellant, or procure a conveyance of it from another, when, by the terms of the contract, he is bound so to do, and which time has not yet arrived."

In other states it seems to be the general if not the universal rule that executory contracts of this kind cannot be rescinded and payments of purchase money recovered by the vendee before the time for performance merely because the vendor had not perfect title at the date of the contract, and

this is especially true where the party applying for equitable relief is himself in default. *Smith v. Greene,* 197 Mass. 16, 83 N. E. 9; *Johnston v. Johnson,* 43 Minn. 5, 44 N. W. 668; *Hanson v. Fox,* 155 Cal. 106, 99 Pac. 489; *Garberino v. Roberts,* 109 Cal. 125, 41 Pac. 857; *Bryson v. Crawford,* 68 Ill. 362; *Claude v. Richardson,* 127 Iowa, 623, 103 N. W. 991; *Ward v. James,* 84 Oreg. 375, 164 Pac. 370; *Annis v. Burnham,* 15 N. Dak. 577, 108 N. W. 549; *Ready v. Sound Inv. Co.* 64 Wash. 422, 116 Pac. 1093; *Groves v. Stouder,* 58 Okla. 744, 161 Pac. 239; Maupin, Marketable Title (3d ed.) 876. These cases are illustrations of the rule long ago declared by the United States supreme court as follows:

"And no rule in respect to the contract is better settled than this: That the party who has advanced money, or done an act in part performance of the agreement, and then stops short and refuses to proceed to its ultimate conclusion, the other party being ready and willing to proceed and fulfil all his stipulations according to the contract, will not be permitted to recover back what has thus been advanced or done." *Hansbrough v. Peck,* 5 Wall. 497, 506, 507.

A valid contract for the sale of land may be made by one who has only the equitable title, or a partial title, or one subject to incumbrances, and if the vendor fails to convey as stipulated in the agreement he may be compelled to respond in full damages, but he is entitled to the time agreed on for performance in which to remove incumbrances or perfect his title.

The argument of counsel for the plaintiff is based on the fallacy that it may be presumed that the defendant will not be able or willing to convey good title. If presumptions in such cases are to be indulged they should rather be, in the absence of fraud, that parties intend to meet their obligations. *Diggle v. Boulden,* 48 Wis. 477, 4 N. W. 678. We certainly find in this case no facts which would warrant the presumption that defendant would not be able to comply with the terms of his contract.

From the evidence it is reasonable to infer that between the date of the contract and the commencement of the suit the land had depreciated in value. The defendant had a substantial investment in the property and it was clearly to his interest to perfect his title and fulfil the agreement with the plaintiff. It is plain from the evidence that the plaintiff was unable or unwilling to carry out his agreement. When the second payment became due he assigned other reasons than defects of title for refusing to comply with the contract.

It is argued by counsel for plaintiff that it might be a hardship for the plaintiff to go on making payments in uncertainty whether title could be secured. If, when the time for performance arrived, the defendant were unable to convey a marketable title, the plaintiff had the same legal remedies afforded in other similar cases. He could then rescind the contract and recover the purchase money already paid. He could have his action at law for damages. If title to only a portion of the land could be secured, he could have a proportional abatement made from the purchase price.

Undoubtedly there are exceptional circumstances where in executory contracts of this kind the purchaser may rescind the contract and recover payments made. Such a case is presented when there is fraud which induces the contract, or where it is clear that performance on the part of the seller will be impossible. In some cases the insolvency of the vendor has been treated as a fact proper to be considered. But this case presents none of these situations, and to allow the plaintiff to rescind on the facts proven would savor too much of allowing a party to base rescission on his own default.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the complaint.