SPRECKELS v. SPRECKELS SUGAR CORPORATION et al.

CITY OF YONKERS v. HOLTON et al.

No. 460.

Circuit Court of Appeals, Second Circuit.
July 15, 1935.

Morris L. Rosenwasser, First Asst. Corp. Counsel, and Leonard G. McAneny, Corp. Counsel, both of Yonkers, N. Y., for appellant.

Mitchell, Taylor, Capron & Marsh, of New York City (John B. Marsh and B. A. Brand, both of New York City, of counsel), for appellees.

F. W. H. Adams, U. S. Atty., of New York City (Walter H. Schulman, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

This is an appeal by the city of Yonkers from a decree in equity directing the property of the two defendants to be sold free and clear of all liens, including taxes. The nature of the original suit does not appear in the record beyond the statement that receivers had been appointed with the customary powers of "equity receivers." Probably it was a creditor's sequestration bill, common in federal courts, and in any case, since the record is silent, we are to suppose that the court had power to sell the assets. The property consisted of a large sugar refinery in the city of Yonkers on the shore of the Hudson river, next to which was a distillery, to convert into alcohol the molasses which is a by-product of sugar refining. The sugar company owned the refinery and all the shares of the syrup company; the syrup company owned the distillery. The receivers for the sugar company were appointed on January 18, 1932, but as the business had been already closed down for nearly two years, they did

nothing but sell the product and raw material, after which their activities were limited to preserving the property. Before suit filed the city had imposed taxes upon both properties for the year 1931, and by the time the decree on appeal was entered, January, 1935, taxes for four more years were added, practically all of which were unpaid. The total of principal, interest, and penalties upon the refinery, which was assessed for $2,700,000, was $527,627.05; and upon the distillery, assessed for $363,-700, was $66,239.87. The United States asserts excise taxes upon the distillery of $7,000,000 for alcohol unlawfully diverted during prohibition. The receivers wished to dispose of the assets as speedily as possible, for the mere expenses of upkeep were about $15,000 a month; and in 1933 they got a decree for the sale of the refinery and the shares of the distillery. The matter was delayed and the decree was modified in some respects, and in January, 1934, the syrup company was joined as a defendant in the suit, and the receivership extended to it. Finally between March 26 and 31, 1934, a sale was attempted of both properties, separately and jointly in bulk, and the refinery also piecemeal. Its land was divided into parcels, of which at least three, numbered I, J, and K were to be sold free from taxes and the others subject to them. The machinery was divided between fixtures which were subject to taxes and chattels which were not. All three bulk sales were to be subject to taxes. The receivers advertised extensively, distributing over three thousand catalogues and five thousand circulars, but in spite of every effort the sale was a failure. It is true that a bid of $475,000 was made for the distillery. but it was payable over ten years, one-tenth a year; while for the free parcels, I, J, and K, of the refinery only $4,150 was bid, and $200 for all the rest of the realty. A bid of about $200,000 was received for the machinery, of which substantially $195,000 was for the free chattels. The court rejected all these bids, and the receivers thereupon asked leave to sell again, this time free from taxes. The United States consented, as it had to the earlier sale, but the city objected, insisting that its liens could not be cleared in this way, and that if they could, there was no evidence of any equity above them. Neither side put in any evidence upon the value of the properties, but it does appear that the receivers had tried in 1933 to reduce both assessments; that upon the refinery to $1,200,000, that upon the distillery to $188,700. The

city officials heard them at length, but were willing to make only trifling reductions and the receivers had no money to appeal to the courts. Against the refinery the United States claims income taxes of $1,800, and the state of New York about $90,000, franchise taxes. The district judge upon this showing overruled the objection of the city and passed a decree directing a sale free of tax liens without upset price, all bidders to deposit 25 per cent. in cash to hold their bids; all liens to be transferred to the proceeds. This is the decree from which the city appeals.

The power of a court of bankruptcy to sell free of taxes was settled in Van Huffel v. Harkelrode, 284 U. S. 225, 52 S. Ct. 115, 76 L. Ed. 256, 78 A. L. R. 453, and had been exercised over protest in a suit in equity in Broadway Trust Co. v. Dill, 17 F. (2d) 486 (C. C. A. 3), a decision cited with approval in Van Huffel v. Harkelrode. Indeed the Supreme Court made no distinction between such a lien and any other, and unless a state be involved, there is no apparent ground for one; its reasoning took the practice in equity as a precedent, making it one ground for the procedure in bankruptcy. We have no doubt that the power exists; the question is only as to the propriety of, and the proper conditions upon, its exercise. It is quite true, although there is perhaps no rigid rule about it, that ordinarily a court will not sell property free of liens unless it can see that there is a substantial equity to be preserved. In re Franklin Brewing Co., 249 F. 333, 335 (C. C. A. 2); Seaboard Nat. Bank v. Rogers Milk P. Co., 21 F.(2d) 414 (C. C. A. 2). However, the city has not here shown that there is no equity to preserve; on the contrary, at least in the case of the refinery there was reason to suppose that there is. The total taxes of all sorts against its properties are about $620,000 at the outside; and while we are quite aware that assessments, especially in these days, are not an accurate measure of value, it would be shocking to assess a property at more than four times its value. However irrelevant that might be as against third persons, this is a dispute with the city, against which its own admission, solemnly made again and again and reasserted after a hearing of the taxpayer's complaint, is certainly good enough evidence until it has been answered. The bidding on the first sale was indeed most discouraging; it seemed to indicate that there was little equity; but the conditions were discouraging too, for the purchaser would have had to

bring a suit to determine the proper allocation of taxes between the parcels. Even so there was an appreciable equity, which might well be much increased when the clogs were taken off. Therefore as to the refinery we think there was enough to support a sale free and clear. As to the distillery, not only is the disproportion between assessment and taxes as great, but the former sale proved that there was a very substantial equity. The only complicating circumstance is the huge, though nebulous, claim of the United States for excises, a very small part of which would eat up the whole property, if it is prior to the city's lien. But if it is, the city has no interest and cannot be heard. On the other hand, if its own lien is prior, the same considerations apply as apply to the refinery. Only in case the lien of the United States is prior but not large enough to use up the whole value of the distillery, is the city's position tenable. Against that possibility, however, is the consent of the United States, whose presumptively greater interest entitles its will to prevail so far.

■■ The decree was not made hurriedly or without deliberation. The estate had been already three years in attempted liquidation, slowly wasting away. The creditors had not been able to reorganize; and the court had once acceded to the city's wishes by a sale at which every effort was made. Nothing had resulted; plainly the alternatives were to sell free and clear, or to abandon everything but the machinery. The creditors and other lienors were a legitimate care for the court; the city was not the only party to be considered, and it was proper to strike a balance between the conflicting interests. First National Bank v. Shedd, 121 U. S. 74, 87, 7 S. Ct. 807, 30 L. Ed. 877. On the main issue it does not appear that the judge abused his discretion. The city insists, however, that the decree is unlawful because it prevents it from becoming a bidder, and abridges its remedies for unpaid taxes given by statute. Ordinarily it may sell land for taxes and buy it in, crediting the sum due against its bid. Being first lienor it need consider no prior interests, and can thereafter hold the property for an advantageous sale. On the other hand, it has no power to pay cash for property, or to secure a bid by a deposit; therefore in the sale at bar it must stand aside and await the result of the auction. In these regards it is true that the position of the city has been prejudiced, though the

difference is not so substantial as appears, or grave enough, we think, to upset the judge's decision. In so far as it is not a prior lienor, that is, if the liens of the United States and the State of New York come before it—or perhaps even some of the expenses of administration—it cannot hope to realize on more than the equity which will remain after these are paid; it is like any other junior lienor. True, under the statute it could buy in and wait for a better market to sell the equity, but that is all. If it is senior lienor, it must also wait if it buys in. What it loses in either case by this decree is no more than the choice of its time to turn the land into cash, and in that it is like any other lienor whose lien is sold in invitum; such a sale curtails his remedies. The whole doctrine necessarily rests upon the power of a court of equity, exercised from the earliest times, to abate the severity of a ruthless exercise of a lienor's powers. Against it from the beginning lienors have protested, invoking the terms of their bonds; to them courts of equity have as uniformly turned a deaf ear, so long as the substance of their rights was preserved. The decree did not, we think, unfairly trench upon the city's remedies.

■ One other objection is made—the absence of an upset price. First it is said that the court disregarded the second proviso of the amendment of 1934 to section 847 of title 28 of the United States Code (28 USCA § 847). That proviso was a condition only upon the first proviso which gave power to sell privately; the old power of public sale was not circumscribed; it had existed for many years. Chase Nat. Bank v. Pan American Petroleum Co. (D. C.) 9 F. Supp. 394. The court can of course fix an upset price of its own motion and often does. If the city's liens were plainly prior, and if they covered all the property, it might be desirable to take their face as an upset price; this would be a consideration for the fact that the city cannot bid. But the complication resulting from any such attempt, as things are, is insuperable. Most of the machinery is not subject to the lien; both properties are probably subject to prior liens; the decree properly contemplates bulk bids, joint and several, and parcels bids for the refinery. We might impose an upset price on the aggregate of the parcels bids for the realty, but it would do no good if the property were sold in bulk and conceivably might favor bulk bidding at the expense of parcels bids. Besides, it must

always be remembered that the bids must in any event come back to the court for confirmation when gross injustices can be corrected. All things considered, we cannot therefore say that the decree should have imposed an upset price; the affairs of these companies are too much entangled, and the interest of all concerned for a quick disposition is too pressing.

Decree affirmed.