WIEGMAN and wife, Respondents, vs. ALEXANDER and wife, Appellants.*

*April 9—May 6, 1958.*

* Motion for rehearing denied, without costs, on June 26, 1958. See memorandum, post, p. 131.

120

121

122

124

For the appellants there was a brief and oral argument by *Robert Zum Brunnen* of Spooner.

For the respondents there was a brief by *Douglas, Omernik & Bitney* of Spooner, and oral argument by *W. W. Bitney*.

FAIRCHILD, J. The parties appear to agree that the amended description accurately covers the property intended to be sold. It is clear that the triangular parcel of lot 7, deeded by Mrs. French to plaintiffs after issue was joined, is included in the amended description but was not included in the original description. The omission was an unintentional error. Defendants assert that a northwesterly part of the property intended to be sold and of the amended description lies outside Sunnyside Addition and outside the original description. They are correct if the measurements shown on the plat are taken literally and if one concludes that a portion of government lot 5 was not included in the plat; wrong if one concludes that the plat was intended to and did cover all of government lot 5 and that the error in measurements on the plat should all be resolved by increasing the size of lots 8 and 9 without changing the size and boundaries of lots 1 to 7, inclusive.

As we see the situation existing in November and December, 1956, the deficiencies in the original description gave defendants a right to reformation, but not rescission. There was no evidence of fraud, nor of any knowledge by plaintiffs of any deficiency in the original description until after they commenced their action to foreclose. There was no evidence of any refusal by plaintiffs to correct the description after the deficiencies were called to their attention. Before trial, plaintiffs bound themselves by their amendment of their complaint to convey according to the amended description, which sufficiently covers the property intended to be sold. They

had obtained from Mrs. French a deed to the triangular parcel of lot 7 and no question has been raised as to Mrs. French's title to lot 7. Defendants' possession of the property intended to be sold had not been disturbed or threatened. They did not prove that Mrs. French makes any claim to the property included in the amended description.

"It is ordinarily not essential, to entitle a vendor to enforce a contract for the sale of land, that at the time he made the contract he should have had title and capacity to convey the land, or such means and right to acquire the same as would have enabled him to fulfil it on his part; it is sufficient if he is able to convey the land when, by the terms of the contract or the equity of the case, he is required to do so, in order to entitle himself to the purchase price. The mere lack of title in the vendor at the time he entered into an executory contract for the sale of the land ordinarily does not entitle the vendee to rescind." 55 Am. Jur., Vendor and Purchaser, p. 718, sec. 271.

"A valid contract for the sale of land may be made by one who has only the equitable title, or a partial title, or one subject to incumbrances, and if the vendor fails to convey as stipulated in the agreement he may be compelled to respond in full damages, but he is entitled to the time agreed on for performance in which to remove incumbrances or perfect his title. . . .

"If, when the time for performance arrived, the defendants were unable to convey a marketable title, the plaintiff had the same legal remedies afforded in other similar cases. He could then rescind the contract and recover the purchase money already paid. He could have his action at law for damages. If title to only a portion of the land could be secured, he could have a proportional abatement made from the purchase price.

"Undoubtedly there are exceptional circumstances where in executory contracts of this kind the purchaser may rescind

the contract and recover payments made. Such a case is presented when there is fraud which induces the contract, or where it is clear that performance on the part of the seller will be impossible. In some cases the insolvency of the vendor has been treated as a fact proper to be considered." *Knapp v. Davidson* (1923), 179 Wis. 493, 500, 501, 192 N. W. 75.

"It is true that, generally speaking, the American cases deny relief to the vendee, pending the contract period, unless the negative fact appears that the vendor will not be able to perform; whereas the English cases deny relief only where the affirmative fact appears that the vendor actually has the title agreed upon, or, by virtue of some existing legal or equitable right in himself, will have it in due time." Anno. 109 A. L. R. 246; *Diggle v. Boulden* (1880), 48 Wis. 477, 482, 4 N. W. 678.

The parts of the judgment of the county court denying rescission and granting reformation were correct and must be affirmed.

The judgment also awarded plaintiffs foreclosure unless defendants should make full payment of all unpaid amounts within ninety days. We conclude that this portion of the judgment is inequitable, in part, because it would require defendants, if they would avoid foreclosure, to pay the full amount for a conveyance from plaintiffs when plaintiffs do not have marketable title to all the property intended to be sold. It should also be remembered that defendants' first defaults occurred when they were entitled to reformation of the original description in the land contract.

". . . where no provision indicating the character of the title is made in a contract for the sale of real estate, the law implies that the vendor is to convey a marketable title free from incumbrances." *Petre v. Slowinski* (1947), 251 Wis. 478, 483, 29 N. W. (2d) 505.

It may be argued with some force that Mrs. French intended the plat to cover all of government lot 5 and that all of it not included in lots 1 to 7, inclusive, was intended to fall within lots 8 and 9. There is some evidence that Mrs. French has acted consistently with that proposition and none of any inconsistent act. Nevertheless the fact that the plat shows certain dimensions for lot 8 and that Mr. Andrews found a monument at the northern tip of lot 8, consistent with at least one dimension shown on the plat, raises a reasonable doubt of plaintiffs' title to some parts of the property intended to be sold and renders the title unmarketable.

There is a rule that "where a tract of land is subdivided, and is thereafter found to be larger or smaller in any dimension than the aggregate of the tracts comprising it, as shown by the survey, the excess or deficiency, with a few exceptions, is apportioned among its several component parts." 1 Patton, Titles (2d ed.), p. 420, sec. 158. The application of this rule to the plat of Sunnyside Addition is doubtful because of the specific dimensions given to lot 8 and because the monument marking its northerly apex, as platted, was found. Furthermore, Mrs. French would not be bound by any decision made in this action.

There is a rule "that when, in subdividing a line or space, the surveyor declares the dimensions which he has given to each of the subdivisions except the last, and there leaves an irregular space without designating its dimensions, he will be presumed to have thrown the remainder, much or little, into that irregular and unmeasured portion." *Pereles v. Gross* (1905), 126 Wis. 122, 128, 105 N. W. 217. Where, however, specific dimensions are given to each lot upon the plat "and there is no lot in the block of which the specific dimensions are not thus given, there seems to be no substantial reason why such excess should be given wholly to one lot merely because its dimensions, as given upon the

plat, differ from those of the other lots." *Pereles v. Magoon* (1890), 78 Wis. 27, 31, 46 N. W. 1047. In that case the excess was apportioned among the several lots in accordance with their respective frontage. For similar apportionment of a deficiency, see *O'Brien v. McGrane* (1871), 27 Wis. 446.

"Variances found in the length of surveyed lines of private surveys are also adjusted by the rule that excesses or deficiencies are computed between one permanent or known monument and another, and are apportioned to the intervening tracts only. Where, therefore, the original corners of a lot can be found, it is not affected by any discrepancy in the size of the block in which it is located." 1 Patton, *op. cit.,* p. 423, *Pereles v. Gross, supra,* page 127.

While defendants could not rescind at this juncture because of lack of marketable title in plaintiffs, it is also true that plaintiffs are not yet in a position to perform their obligations.

We might perhaps assume that marketable title may be established by a confirming deed from Mrs. French covering the amended description, it not appearing that she has made any conveyances to others which would infringe upon the amended description, nor that there are incumbrances upon any interest which might remain in her. She has not given such deed, nor was she a party to this action so as to be bound by the judgment.

Under the circumstances disclosed by this record, the judgment should have permitted defendants to redeem by payment of the sums they would have been required to pay under the land contract up to the date of such payment without acceleration of their obligations by reason of their default. A reasonable period should be fixed within which defendants may make such payment. If, within that time all instalments of principal which would have fallen due under the land con-

tract in ordinary course are paid, interest on unpaid principal is paid, taxes and insurance premiums are paid, and the costs of this action in the county court are paid, possession should be restored to defendants and they should be permitted to continue in possession and enjoy their other rights under the land contract so long as and to the extent that they fulfil the obligations they would have had assuming there had been no acceleration of their obligation to pay the entire balance by reason of their default. Provisions foreclosing defendants in the event of failure to redeem should be included. It follows from what we have said that plaintiffs are obligated to put themselves in a position to convey marketable title when the time arrives for conveyance.

*By the Court.*—In so far as the judgment decrees reformation of the land contract and dismisses the counterclaim, it is affirmed; in so far as it provides for terms of redemption and for foreclosure, it is reversed, and the cause is remanded with directions to enter judgment in conformity with the opinion herein.

HALLOWS, J., took no part.

The following memorandum was filed June 26, 1958:

PER CURIAM (*on motion for rehearing*). Plaintiffs ask us to modify our mandate. They point out the fact that plaintiffs were in possession of the resort property from the time it was vacated by defendants until the present. Apparently they do not consider the value which they have derived from possession and operation of the property as a sufficient offset for expenditures which they assert they made for the purpose of maintaining the resort as a going business during the pendency of the action. Defendants concede that plaintiffs are entitled to their costs for necessary repairs and maintenance but assert that equity would require that plaintiffs

account for any income received in the operation of the resort. Since the facts to which the parties refer are not part of the present record, it is clear that they must be established on further hearing before the county court. We do not wish to prejudge the question of what adjustments in the terms of redemption will be necessary and equitable by reason of the benefits plaintiffs have derived from their possession of the property on the one hand and the expenses necessarily incurred by them with respect to the property while they were in possession on the other. The county court should proceed to determine what the relevant facts are and to provide among the terms of redemption in its judgment for such adjustment in this respect as will do equity. Therefore the mandate originally filed is hereby amended to read:

"In so far as the judgment decrees reformation of the land contract and dismisses the counterclaim, it is affirmed; in so far as it provides for terms of redemption and for foreclosure, it is reversed, and the cause is remanded with directions to enter judgment not inconsistent with the opinion originally filed herein and the memorandum filed on motion for rehearing."