UNITED STATES of America, Plaintiff-Appellee,

v.

Anthony J. PETERS, Defendant-Appellant.

Appeal of Walter F. KELLY and Sandra J. Hays, Forfeiture Purchasers-Appellants.

No. 84–2636.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 11, 1985.

Decided Dec. 2, 1985.

Walter F. Kelly, Sutton & Kelly, Milwaukee, Wis., for appellants.

Lawrence O. Anderson, Asst. U.S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Before WOOD, COFFEY and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

Walter Kelly and Sandra Hays purchased a parcel of property from the United States. The government had obtained the property through criminal forfeiture proceedings pursuant to 21 U.S.C. § 848(a)(2)(A) (1970).[1] The purchasers appeal the district court's decision denying their motion to compel the United States to convey the property by a warranty deed. We believe the district court was correct in concluding that the United States marshal lacked the authority to convey the property by such a deed. However, we remand to permit the district court to determine whether equity requires rescission or reformation of the contract.

On May 16, 1984, pursuant to the criminal forfeiture provision of the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 848 (the 1970 Act), the district court ordered Anthony J. Peters to forfeit real property located at 3370 N. Gordon Place, Milwaukee, Wisconsin. The United States then placed the forfeited property on the market and agreed to put the proceeds from the sale in an interest-bearing escrow account pending the outcome of Peters' appeal. On July 9, 1984, Walter Kelly and Sandra Hays submitted an offer to purchase the property from the United States. The offer to purchase contained "boilerplate" language requiring conveyance by warranty deed. The chief deputy United States marshal accepted the offer to purchase. In their offer, the purchasers required court approval of the sale within ten days of acceptance. On July 24, 1984, the district court approved the sale.

Subsequent to the initial court approval, the Assets Forfeiture Office of the Department of Justice informed the assistant United States attorney handling the case that the United States could convey only a quit-claim deed to the purchasers-appellants, Kelly and Hays—regardless of what kind of deed the criminal defendant ten-

1. In 1984, the Congress replaced 21 U.S.C. § 848, the section at issue in this appeal, with 21 U.S.C. § 853. This new section permits the government, as long as it complies with the procedures set forth in the statute, to grant a warranty deed to third party purchasers. The new statute took effect October 12, 1984.

dered to the United States in satisfaction of the forfeiture judgment.[2] The assistant United States attorney immediately contacted Kelly and Hays and informed them of the Department of Justice policy. Several days before the scheduled closing, he gave them notice that transfer would be by a marshal's (quit-claim) deed.

Kelly and Hays filed a motion in the district court to compel the United States to convey the property by warranty deed. On August 28, 1984, the district judge denied that motion, holding that the marshal had no authority to convey the property by warranty deed. Kelly and Hays closed the sale and, under protest, accepted the marshal's deed. Although the court consolidated for oral argument this appeal with the criminal appeal of Anthony J. Peters, we decide the cases separately.

■ The question before the court can be simply stated: Did the Congress authorize the use of a warranty deed to convey to third parties real property obtained by the United States through criminal forfeiture proceedings? While the question is straightforward, the answer is somewhat more complicated since Congress—at least at the time it enacted the statute in question in this case [3]—did not express its intent in the plain wording of the statute.

While section 408 of the 1970 Act, 21 U.S.C. § 848(a)(2)(A), clearly provided for the forfeiture of the property as a result of the criminal conviction, it provided no directions for disposing of the property. No other statute cited by the parties or found through our own research provides an explicit directive on the question. Faced with this absence of explicit statutory direction, we are left to find, as best we can, Congress' intent from other and obviously less reliable sources.

While the starting point must be the forfeiture provision itself, not only does the statutory language provide no guidance but the usual tools of statutory construc-

tion also provide little assistance. The extensive legislative history of the 1970 Act is silent on this issue. Nor does the contemporaneous legislative history of the similar forfeiture provision in the Organized Crime Control Act of 1970, 18 U.S.C. § 1963, shed any light on the matter. Neither the submissions of the parties nor our own research has revealed any cases discussing the type of deed by which forfeited property is to be conveyed. The government submits that the Department of Justice has a national policy prohibiting transfer by warranty deed. However, the government points to no regulations, directives or other material which might support such an interpretation. Our own research has also been unavailing in this regard. Under these circumstances, we can hardly characterize this "national policy" as the "longstanding interpretation given the statute by the agencies charged with its interpretation." *United States v. Clark,* 454 U.S. 555, 562, 102 S.Ct. 805, 810, 70 L.Ed.2d 768 (1982). *See also United States v. Markgraf,* 736 F.2d 1179, 1183–84 (7th Cir.1984), *cert. dismissed,* —— U.S. ——, 105 S.Ct. 1154, 84 L.Ed.2d 308 (1985) (applying the holding in *Clark* ).

While this dearth of information affords us no guidance, we must attempt, nevertheless, to resolve the issue before us in the manner most compatible with the intent of Congress as manifested in the statutory scheme. An examination of the forfeiture provision reveals that Congress clearly intended that the government acquire only that interest which the criminal defendant held in the property. Unless the government takes other action to perfect its interest, it can only transafer that interest which it has acquired and nothing more. Transfer under a warranty deed would require the government to assume the substantial additional obligation of vouching for the soundness of the title held by a person it has just convicted. By contrast, a

---

**2.** Subsequently, on August 29, 1984, Anthony J. Peters agreed to convey to the United States a warranty deed on the property located at 3370 N. Gordon Place.

**3.** *See supra* note 1.

marshal's deed is equivalent to a quit-claim deed; it transfers only that interest held by the seller; it makes no guarantees. Therefore, permitting the government to transfer only by a marshal's deed is certainly most consistent with the overall statutory scheme Congress enacted in 1970.

No doubt, Congress could have determined that public policy requires the government to assume the role of warrantor. Transfer by warranty deed makes the property more marketable, more valuable, and more easily transferred in the future. Indeed, in the newly enacted section 303 of the Comprehensive Crime Control Act of 1984, 21 U.S.C. § 853(n),[4] Congress did manifest such a policy choice. This amendment to the criminal forfeiture provision establishes an extensive procedure for protecting the interests of third parties. Following written notice, notice by publication, and hearings, the government acquires "clear title to the property that is the subject of the order of forfeiture and may warrant good title to any subsequent purchaser or transferee." 21 U.S.C. § 853(n)(7).[5] The structure of the new provision protects both the third party's and the government's interest since after complying with the statutory procedure, the government acquires clear title. Thus, the risk the government assumes in conveying a warranty deed under the amended statute is far less than the risk which would be imposed by a warranty deed under the old statute before us today. The old scheme contains none of the devices set forth in the new statute to minimize the risk assumed by the United States in conveying by warranty deed. We think it highly improbable that Congress was willing to assume a risk in 1970 that it was clearly unwilling to assume in 1984. In short, we simply are unwilling to assume, absent an explicit legislative directive, that the Congress expected the United States to undertake such a liability. Our examination of the new provision and its legislative history convinces

us that this amendment was not designed to clarify existing law. Rather, it reflects a new legislative policy decision with respect to the allocation of risks in the transfer of property obtained by the government through criminal forfeiture proceedings. Indeed, the existence of this new statute makes it abundantly clear that, had Congress intended the government to convey property by a warranty deed under the earlier statute, it would have used more precise language.

■ The appellants further argue that, even if the statute did not authorize the transfer of property by warranty deed, such a transfer ought to be judicially mandated in this case. The appellants' offer to purchase contained the provision for transfer by warranty deed. The chief deputy United States marshal accepted the offer on behalf of the United States and the district judge approved the sale. The chief deputy or deputy marshal is authorized to execute a deed or transfer title to a purchaser on behalf of and in the name of the United States marshal. 28 C.F.R. § 0.156 (1984). The United States marshal's office handles all judicial sales of property acquired by the United States through operation of law. However, the duties of an officer selling property at a judicial sale are ministerial. He must observe requirements of the applicable law. *Quinn v. S.S. Jian,* 235 F.Supp. 975, 977 (D.Md.1964). The government cannot be placed at risk each time one of its agents fails to follow a government policy or regulation. *Schweiker v. Hansen,* 450 U.S. 785, 790, 101 S.Ct. 1468, 1471, 67 L.Ed.2d 685 (1981). The marshal's acceptance of a purchase offer containing a provision for transfer by a warranty deed was beyond the scope of his power and therefore did not bind the United States.

■ While the district judge approved the sale, we do not believe that, under the circumstances of this case, this action es-

---

**4.** *See supra* note 1.

**5.** No question with respect to the constitutional adequacy of these provisions is before us in this

case and therefore we express no view on that question.

topped the government from later contesting whether a warranty deed must be issued. Nothing in the record indicates that the court or the parties focused, at the time of the initial judicial approval, on the warranty provision in the offer to purchase. Moreover, the court's action must be evaluated in light of the fact that, approximately one month later, when both parties argued the issue before him, the same district judge unequivocally ruled that the marshal was not empowered to issue a warranty deed. Under those circumstances, we cannot say that the district judge abused his discretion in declining to order specific performance by the government through the delivery of a warranty deed.[6]

Although Kelly and Hays knew before the closing that the conveyance would be by a marshal's deed, the record is unclear as to whether the district court or the parties considered rescission or reformation of the contract as a remedy still available to the purchasers. We believe that justice requires that we remand this matter to the district judge to permit him to consider any equitable relief in the way of rescission or reformation which he may deem appropriate. We express no opinion as to the appropriateness of any particular remedy—or even as to whether any relief at all is appropriate. We leave those matters in the hands of the district court.

So ordered.

COFFEY, Circuit Judge, concurring and dissenting.

I concur, but for reasons different from those set forth in the majority's decision that concludes that the district court correctly denied the plaintiffs' request for specific performance of the contract term that provided for a warranty deed. I cannot join in the majority's decision to remand this case to the district court for consideration of the remedies of rescission or refor-

mation as the available remedy of rescission of the contract was thoroughly explored before the district court. I therefore write separately.

## I.

This dispute arises out of the sale of real estate forfeited to the United States pursuant to 21 U.S.C. § 848(a)(2)(A) (1970). Under the court order of forfeiture, the United States Marshal for the Eastern District of Wisconsin took possession of the property and retained the services of a licensed real estate broker to dispose of the property. The real estate broker used a standardized Residential Offer to Purchase, approved by the Wisconsin Department of Registration and Licensing, providing: "Seller shall, upon payment of the purchase price, convey the property by warranty deed, or other conveyance provided...." The Residential Offer to Purchase signed by Kelly and Hays on July 9, 1984, failed to specifically provide for an "other conveyance." The United States Marshal accepted the Offer to Purchase on July 10, 1984 and, on July 24, 1984, the United States Attorney filed a petition with the district court stating that on May 16, 1984, the court had ordered the property forfeited after a jury determination that the property consisted of profits derived from a continuing criminal enterprise; that the property had been placed in the possession of the United States Marshal, who retained the services of a licensed real estate broker to dispose of the property; that the property had been appraised by a professional appraiser; and that Kelly and Hays had made an offer to purchase the property. The United States Attorney submitted the Offer to Purchase to the court and requested the court to authorize the United States Marshal to "accept and approve said offer on behalf of the United States of America." On that same day, the

---

**6.** The district judge was certainly within his authority, granted by 21 U.S.C. § 848, in taking such actions. We also note that 28 U.S.C. § 2001(a) (1949) directs that sales of real property "shall be upon such terms and conditions as the court directs." It is well established that confirmation of a judicial sale rests in the sound discretion of the district court and will not be disturbed on appeal except for abuse. *United States v. Branch Coal Corp.,* 390 F.2d 7, 10 (3d Cir.1968); *United States v. Heasley,* 283 F.2d 422, 426 (8th Cir.1960).

court issued an order authorizing the United States Marshal to accept the Offer to Purchase.

On August 22, 1984, eight days before the scheduled closing date of August 30, the United States Attorney informed the purchasers and the court that the Asset Forfeiture Office of the Department of Justice in Washington, D.C. had directed the Government to convey the property with a Marshal's deed[1] rather than a warranty deed. The United States Attorney explained to the purchasers that the government could not give a warranty deed because "21 U.S.C. 848, the Continuing Criminal Enterprise Statute, authorizes the United States to receive only whatever interest the defendants had in the property." The Department of Justice, therefore, had adopted a national policy of conveying property forfeited under the Continuing Criminal Enterprise Statute by Marshal's deed. On August 24, some two days later, the purchasers filed a motion in the district court requesting the court to order the Government to convey the property by warranty deed. Because the buyers' motion, entitled "a motion to compel," requested the district court to order the Government to perform a contract term, I treat it as a motion for specific performance. Indeed, both parties in their briefs to this court treat the motion as a motion for specific performance.

The district court held a hearing on the buyers' motion to compel on August 27, 1984. The Assistant United States Attorney explained to the court that the Justice Department could not authorize conveyance by warranty deed because the appeal of the criminal defendant, Peters, was pending in the United States Court of Appeals. Thus, there existed at least the possibility that Peters might have his conviction reversed on appeal and thus the forfeiture invalidated.[2] The Assistant United States Attorney further informed the court that, to assure the purchasers that the criminal defendant, Peters, would not seek to overturn the sale, the United States Attorney was attempting to obtain a warranty deed from Peters running from Peters to the United States. The Assistant United States Attorney stated that even though the Government obtained a warranty deed from Peters, it would not give a warranty deed to Kelly and Hays because the Justice Department had adopted a national policy of conveying property forfeited under the Continuing Criminal Enterprise Statute by Marshal's deed only: "[The] Justice [Department's] position is that they will only convey whatever they get from the defendant in a criminal forfeiture case, and even though extraneously Mr. Peters has given us a warranty deed, [the] Justice [Department] does not desire to warrant the deed beyond Mr. Peters."[3] The Assistant United States Attorney concluded, "Mr. Kelly's alternative is simply is he can *rescind,* and if that is the case he will *rescind* and we will put the property back on the market and attempt to sell it." (emphasis added). Kelly, the purchaser, commenting that he had a "good deal" and noting that the Assistant United States Attorney had been very cooperative since discovering that the Government would only give a Marshal's deed, responded to the suggestion that he rescind: "I agree that this is an alternative that we have. We would prefer not to do that. We like the property, we are ready to move into it, and we believe it was contracted to be sold to

---

**1.** A Marshal's deed that transfers only what right, title or interest the United States, as grantor, may have is equivalent to a quitclaim deed. *Hagan v. Gardner,* 283 F.2d 643 (9th Cir.1960).

**2.** On August 29, 1984, the Government and Peters entered into an agreement in which Peters consented to giving the Government a warranty deed and the Government agreed to place the proceeds of the sale in escrow in an interest bearing account. Peters retained his right to

recover the value of the property, rather than the property itself, should the forfeiture be set aside by future judicial action.

**3.** Indeed, it is common knowledge that local and state governmental agencies refuse to convey tax delinquent, foreclosed, or seized property by warranty deed because they do not want to have to defend the title in quiet title actions brought years after the conveyance.

us by the warranty deed conveyance." Kelly argued that since the Government was going to obtain a warranty deed from Peters, he did not "see any common sense as well as any legal basis for the Government not to convey the property by warranty deed." The district court denied the motion to compel because, "I think that the language of the statute clearly indicates that the Government is getting whatever Mr. Peters has, and I would opine that I really think that the purchasers in this instance are not in much danger." Addressing the question of whether Peters could challenge the forfeiture the court noted:

"I think that there may be other ways in which the parties can adjust to protect the purchasers in the event that there is any reversal of the conviction and the Court was going to leave the parties to their own remedies in that regard. Of course, rescission is one of them, but I do not think you have to go that far. It seems to me that there could be all sorts of escrow arrangements worked out that would permit the sale to move forward and even occupancy to move forward without the danger of forfeiture of any monies should the conviction fall and the forfeiture fall."

Following the denial of the motion to compel, the purchasers informed the United States Attorney in writing that they would close the property transaction, "under protest and with full reservation of all our rights." On August 30, 1984, Kelly and Hays paid $124,900 for the property and received a Marshal's deed from the Government conveying, "all the right, title, interest and claim which Anthony J. Peters, on the day of aforesaid judgment of forfeiture, had in and to the ... land."

## II.

At the outset, although I review the denial of specific performance under the abuse of discretion standard, I disagree with the majority's justification for reviewing this case under that standard because the majority improperly views the motion to compel as a motion to confirm a judicial sale. The majority contends in note 6 that, "It is well established that confirmation of a judicial sale rests in the sound discretion of the district court and will not be disturbed on appeal except for abuse." I find this principle inapposite because a confirmation of a judicial sale is made after the sale has taken place and the very act of the judge's confirmation of the sale resolves the issues of the adequacy of the sales price as well as the good faith of bidders at sale. *See, e.g., United States v. Heasley,* 283 F.2d 422 (8th Cir.1960); *Spreckels v. Spreckels Sugar Corp.,* 79 F.2d 332 (2nd Cir.1935). In contradistinction, the parties in the present case dispute the trial court's *pre-sale* order denying the motion to compel the Government to convey by warranty deed. The decision whether to order specific performance of a contract is a matter resting entirely within the sound discretion of the trial court. *Horner v. Bourland,* 724 F.2d 1142 (5th Cir.1984). Accordingly, I review the district court's decision to deny the motion to compel under the abuse of discretion standard of review because the motion to compel is a motion for specific performance rather than a motion for confirmation of a judicial sale.

The validity and extent of the title held by a purchaser after a conveyance of land located in Wisconsin is governed by Wisconsin law. *See Triple Interest, Inc. v. Motel 6, Inc.,* 414 F.Supp. 589 (D.C.Wis. 1976). The interpretation of a contract to sell real estate owned by the United States government is governed by federal law; thus, the question of whether the United States Marshal was authorized to convey the property by warranty deed is a question of federal law. *Jones v. Tennessee Valley Auth.,* 334 F.Supp. 739, 743 (M.D. Fla.1971) (citing *United States v. Allegheny Co.,* 322 U.S. 174, 64 S.Ct. 908, 88 L.Ed.2d 1209 (1944); *Clearfield Trust Co. v. United States,* 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed.2d 838 (1943); *United States v. Seckinger,* 397 U.S. 203, 90 S.Ct. 880, 25 L.Ed.2d 224 (1970)); *cf.* 13 C.F.R. § 100.1(d) (1985). As the majority correctly notes, the United States Marshal's office, which han-

dles all federal judicial sales of property, acts in a ministerial capacity and must observe the requirements of the applicable law when conducting a judicial sale of property. The forfeiture provisions of the Customs Statutes, 19 U.S.C. § 1, *et seq.*, control the disposition of the property forfeited under the Controlled Substances Act:

"The provisions of law relating to the seizure, summary and judicial forfeiture, and condemnation of property for violation of the Customs laws; the disposition of such property or the proceeds from the sale thereof; the remission or mitigation of such forfeitures; and the compromise of claims shall apply to seizures and forfeitures incurred, or alleged to have been incurred, under the provisions of this subchapter, insofar as applicable and not inconsistent with the provisions hereof...."

21 U.S.C. § 881(d) (" 'This subchapter', referred to in text, was in the original 'this title' which is Title II of Pub.L. 91–513, Oct. 27, 1984 Stat. 1242, and as is popularly known as the 'Controlled Substance Act'." Historical Note, References in Text. West 1981); *see also* 28 C.F.R. § 9 *et seq.* (1985). However, the Customs Statutes fail to specify or mention what type of deed (warranty, quitclaim or Marshal's) must be given by the United States when conveying forfeited real estate. Congress corrected this omission in the Comprehensive Crime Control Act of 1984, but this provision, enacted after the transfer to Kelly and Hays, is not applicable to this transaction. 21 U.S.C. § 893(n)(7).

Although the United States Marshal accepted the Offer to Purchase, I agree and concur with the majority's judgment that the Marshal was not authorized to agree to convey the property by warranty deed.[4] Since the Government receives only that interest which the forfeiting defendant had in the real estate, logically and legally it cannot vouch for the soundness of the defendant's deed and may only give a quitclaim deed. I agree with the majority's holding that, "a marshal's deed is equivalent to a quit-claim deed; it transfers only that interest held by the seller; it makes no guarantees. Therefore, permitting the government to transfer only by a marshal's deed is certainly most consistent with the overall statutory scheme Congress enacted in 1970." I further concur with the majority's analysis of the legislative history of both the statute and its amendment and join in the conclusion that "had Congress intended the government to convey property by a warranty deed under [the version of the statute in effect at the time of the

---

**4.** Although I concur with the majority's determination that the Marshal was without authority to agree to convey by warranty deed, I fail to discern what conclusion the majority draws from this determination. If officials of the Government make a contract they are not authorized to make, neither party is bound. *Chris Berg, Inc. v. United States,* 426 F.2d 314 (Ct.Cl. 1970); *Berns & Coppstein, Inc. v. Commodity Credit Corp.,* 271 F.Supp. 433 (D.C.N.Y.1967). Because the majority holds that the district court's ratification of the Offer to Purchase did not bind the United States, it appears to hold that the contract was void ab initio. Yet, the majority remands the case for the district court to consider the remedies of rescission and reformation. "A rescission is an avoidance of a transaction...." Dobbs, Remedies, § 4.3 at 254 (1973). If the contract was void ab initio, there is no transaction to avoid and the consideration of rescission (which the parties and the district court did, in fact, make) is uncalled for. Reformation is an equitable remedy granted when parties agree on a contract, but write it down in a way that does not reflect their true agreement.

*Id.* § 11.6 at 746. Under the majority's view, the contract was void ab initio, i.e., neither party was bound. Furthermore, after the district court denied the motion to compel, the purchasers informed the United States Attorney that they would close the property sales transaction, "under protest and with full reservation of all our rights." Because the buyers insisted upon preserving their rights under the contract providing for a warranty deed, there was not a novation of this contract. *United States v. Nill,* 518 F.2d 793, 798 (5th Cir.1975) (Novation—the substitution of a new obligation for another with the intent to extinguish the old one—requires a clear agreement or manifestation of the intention of both parties to that effect. *Id.*). Because the contract calling for conveyance by warranty deed was void under the majority's view and the buyers specifically insisted that they were not entering into a new contract when they closed the transaction, the only contract for the district court to "reform" is the contract the majority considers to be void. I fail to understand how the district court is to "reform" a nonexistent contract.

conveyance to Kelly and Hays], it would have used more precise language." Thus, I also conclude that "the Marshal's acceptance of a purchase offer containing a provision for transfer by a warranty deed was beyond the scope of his power and therefore did not bind the United States." Finally, I agree that, "nothing in the record indicates that the court or the parties focused, at the time of the initial judicial approval, on the warranty provision in the offer to purchase." Where I part company with the majority is in its analysis of the events following the government's repudiation of the contract term providing for conveyance by warranty deed. Because I have been unable to find any specific statutory guidance on the type of deed, warranty or Marshal's, the Government is required to use when conveying property forfeited under the Continuing Criminal Enterprise Statute, and because the real estate is located in Wisconsin, I believe it is proper to apply the general contract principles of Wisconsin law to the transaction between the Government and the purchasers of this forfeited property. *Bituminous Cas. Corp. v. Lynn*, 503 F.2d 636, 640 (6th Cir.1974). We need not decide the effect of the Marshal's unauthorized acceptance and the District Court's subsequent ratification because the parties have affirmed the contract to convey the property by performing it—*i.e.*, the buyers rejected their option to rescind the contract both in open court and by letter to the United States Attorney, the buyers have paid the purchase price, and the Government has conveyed the property by Marshal's deed. The performance of a contract affirms the contract and the right to rescind is forever lost. *Thompson v. Village of Hales Corners*, 115 Wis.2d 289, 340 N.W.2d 704 (1983). Since the parties have affirmed the contract to convey the property, the only issue presented for our review is whether the buyers are entitled to specific performance of the contract term providing for conveyance by a warranty deed.

An anticipatory breach of an executory contract is an absolute refusal to perform it before the time of performance. *Aiken*

*v. United States*, 4 Cl.Ct. 685 (1984). *See, e.g., Pierson v. Dorff*, 198 Wis. 43, 223 N.W. 579 (1929). The repudiation may be to all or part of the contract. Corbin on Contracts, § 972 (1952). If a repudiation of a contract term "goes to the essence of the contract," the other party may refuse further performance—*i.e.*, the injured party may rescind the contract. *See Ricchio v. Oberst*, 76 Wis.2d 545, 251 N.W.2d 781 (1977). The injured party is also entitled to restitution—*i.e.*, the return of his money. Corbin at § 979. When the vendor under a contract to sell land refuses to convey the land, the purchaser is entitled to specific performance to force the conveyance. *Horner v. Bourland*, 724 F.2d 1142 (5th Cir.1984). If the vendor is willing to convey the land but is unable to transfer the title he contracted to transfer, the purchaser is entitled to receive that performance as is within the vendor's ability; specifically, the vendor may be required to transfer the land and either reduce the price proportionate to the defect in the title or give an indemnity against future injury. *Wiegman v. Alexander*, 4 Wis.2d 118, 90 N.W.2d 273 (1958); *Gates v. Parmly*, 93 Wis. 294, 67 N.W. 739 (1896); 5A Corbin on Contracts, § 1160 at 188 (1964).

With these principles in mind, I conclude that the Government clearly and effectively repudiated and offered to rescind the contract when it informed the purchasers that it refused to convey the property by warranty deed. Indeed, when asked during the hearing on the motion to compel how the Government would respond to an order to convey by warranty deed, the Assistant United States Attorney replied that the Government would appeal rather than convey by warranty deed. The Government attorney adamantly contended that the purchasers could either accept a Marshal's deed or rescind the contract and stated: "Mr. Kelly's alternative is simply he can rescind, and if that is the case he will rescind and we will put the property back on the market and attempt to sell it." The Offer to Purchase provided: "Should Seller be unable to carry out this agreement by

reason of a valid defect in title which Buyer is unwilling to waive, all monies paid hereunder shall be returned to Buyer forthwith, and this contract shall be void." Thus, under the terms of the contract, the failure to tender a warranty deed free of defects entitled the Buyer to rescission and restitution at that time in the real estate negotiations before the closing. *Ross v. Kunkel,* 257 Wis. 197, 43 N.W.2d 26 (1950). Contrary to the majority's assertion that "the record is unclear as to whether the district court or the parties considered rescission ... of the contract as a remedy still available to the purchasers," the parties and the court discussed the buyers' option to rescind on the record in open court at the hearing on the buyers' motion to compel the Government to convey by warranty deed:

> ANDERSON (Assistant United States Attorney): "Mr. Kelly's alternative is simply he can *rescind,* and if that is the case he will *rescind* and we will put the property back on the market and attempt to sell it."
>
> \*       \*       \*       \*       \*       \*
>
> KELLY: "I would say with respect to Mr. Anderson's remarks about *rescinding,* I agree that this is an alternative that we have. We would prefer not to do that. We like the property, we are ready to move into it, and we believed it was contracted to be sold to us by the warranty deed conveyance. I guess we would be faced with a very difficult question of whether or not to *rescind* if the Court decides not to order the conveyance by warranty deed. All I can say about that is it strikes me that that is not in anyone's interest. If we decide to *rescind* the transaction, I am sure that that's going to be publicized, I did not seek a front page article when the property was sold to us and it seems to me that the Government is going to be as much hurt if we *rescind* as we are going to be hurt."
>
> \*       \*       \*       \*       \*       \*
>
> ANDERSON: "I can certainly understand why he wants a warranty deed, but the simple fact of the matter is we are not going to do it, and, you know, I think the other remedy is *rescission.*"

(emphasis added).

Not only do these quoted passages reveal that the parties discussed the purchasers' option to rescind, they also demonstrate that Kelly and Hays did not want to abandon the contract: "We like the property, we are ready to move into it. . . ."

After the court denied the motion to compel, the purchasers, after having had ample opportunity for some two days to consider and reflect on the Government's offer of rescission and resale of the property, advised the United States Attorney in writing that they would close the property sales transaction, "under protest and with full reservation of all our rights, in view of your failure to tender and deliver, in accordance with the contract of sale, a warranty deed to Walter F. Kelly and Sandra J. Hays as the purchasers of said property." The record fails to reveal whether the Government responded in any manner to the purchasers' "reservation of rights." Thus, Kelly and Hays abandoned their right to rescind the contract to convey the property and elected to accept the conveyance by Marshal's deed with reservation of their right to appeal the denial of the motion to compel. Because the parties and the court fully discussed the buyers' option to rescind and the buyers rejected the remedy of rescission (in open court, in their letter to the United States Attorney, and by performing the contract) and elected to pursue the remedy of specific performance, the buyers have waived their right to rescind and the remedy of *rescission* is no longer available to them. *Stadler v. Rohm,* 40 Wis.2d 328, 161 N.W.2d 906 (1968). (Proceeding with performance of a contract affirms the contract and the right to rescind is forever lost). *Thompson v. Village of Hales Corners,* 115 Wis.2d 289, 340 N.W.2d 704 (1983) (Party's right to rescind for mistake is waived if he affirms the agreement after learning of the mistake). I find a remand "to consider any equitable relief in the way of rescission"

highly inappropriate, meaningless, and a second, unwarranted, "kick at the cat" granting the purchasers one more chance to attempt to bargain on the purchase price. Indeed, granting the purchasers a renewed option to rescind may expose the Government to liability for the purchasers' expenses such as moving and improvements to the property, if any, should the buyers in fact decide to rescind.

Reformation, the second remedy the majority wishes the district court to "consider," is an equitable remedy granted when parties agree on a contract but record the contract in a manner that fails to reflect their true intentions and agreements. Dobbs, § 11.6 at 746. *Schultz v. Rudie,* 275 Wis. 99, 80 N.W.2d 804 (1957). "[T]he purpose of reformation is not to make a new contract for the parties, but rather to adequately express a contract they had made with themselves." Dobbs, at 746. A mistake in expressing a contract must be distinguished from a mistake in forming the contract. *Id.* at 746–47.

> "If the parties contract on mistaken assumptions of fact, or if there is a basic misunderstanding, the remedy is rescission. In such cases, reformation is not an appropriate remedy.
>
> *   *   *   *   *   *
>
> If a purchaser and vendor of land are mistaken about the quantity of land owned by the vendor and construct their transaction accordingly, it may be that rescission will be warranted if the mistake is a serious one, but reformation is not granted for such a mistake, since it is a mistake in formulating the contract in the first place, not a mistake in expressing the contract so formed."

*Id.* In the present case, both the buyer and the seller mistakenly believed that the United States Marshal was authorized to convey the property by warranty deed and the contract, which provided for conveyance by a warranty deed, reflected the true agreement of the United States Marshal and the buyers. Because the parties contracted on the mistaken assumption that the Marshal could convey by warranty deed, there was a mistake in the formulation of the contract rather than an error in the expression of the contract. Since the mistake was in the formulation of the contract, reformation is not the appropriate remedy, much less available, and I dissent to the remand of this case for the district court's "consideration" of this inappropriate and unavailable remedy.

Thus, I confine my attention to the remedy requested by the purchasers—specific performance of the contract term providing for conveyance by warranty deed. Because specific performance is an equitable remedy, the court must find that the plaintiffs cannot obtain full and complete justice by a judgment for monetary damages before granting a decree for specific performance. 5A Corbin on Contracts, § 1136 at 95 (1964). If damages were an adequate remedy, specific performance must not be decreed. *Id.* If the exact duplicate or the substantial equivalent of the subject matter of the contract is readily purchasable, monetary damages are an adequate remedy for the breach. *Id.,* § 1142 at 123. "The specific performance of only a part of the contract should not be decreed, if as to that part the remedy in damages would be adequate or if the circumstances are such that such enforcement would cause unreasonable hardship to the defendant or to third parties, or if the part to be enforced is so small that the suit is substantially one for money damages." *Id.,* § 1167 at 194. A purchaser is entitled to specific performance of a contract to convey land because land is thought to be unique. *Id.,* § 1143 at 126. If a vendor is willing to transfer the land but is unable to deliver the title he contracted to deliver, the vendee can get specific performance of the obligation to transfer the land but cannot get specific performance of the obligation to deliver the contracted for title—the vendee receives compensation for the defective title in the form of an abatement in price proportionate to the deficiency or defect, or an indem-

nity against future injury. *Id.*, § 1160 at 188; *Wiegman v. Alexander*, 4 Wis.2d 118, 90 N.W.2d 273 (1958); *Gates v. Parmly*, 93 Wis. 294, 67 N.W. 739 (1896). In the present case, the Government was at all times willing to transfer the land but unwilling or unable to transfer the property by warranty deed. To reduce the risk to the purchaser, the Government not only obtained a warranty deed from Peters, the forfeiting criminal defendant, but also provided indemnification against future injury in the form of a title insurance policy. If the purchasers' deed is challenged sometime in the future, the title insurance company, unless it has gone bankrupt, will make Kelly and Hays whole. But the United States government properly refused to bind itself to warranting the validity of Peters' deed. In noting, "I really think that the purchaser in this case is not in much danger," the district court in effect found that the purchaser had received the substantial equivalent of a warranty deed—a Marshal's deed transfer of property the Government received by warranty deed and a title insurance policy. Furthermore, the breach was confined to the obligation to convey by warranty deed and is equivalent to the defective title cases. Since the United States Marshal was willing to convey the property, the buyers were only entitled to an abatement of price or an indemnification against future injury. Because the purchasers received the substantial equivalent of a warranty deed and indemnification against future injury in the form of a title insurance policy, and, furthermore, because the breach was not to the obligation to convey but was confined to the type of title to be delivered, I would affirm the district court's judgment that the purchasers were not entitled to specific performance of the contract term providing for conveyance by warranty deed.

For all the above reasons, I concur in the affirmance of the district court's denial of the motion to compel and dissent to the remand to consider the remedies of rescission and reformation.